RAILWAY COMPANY *v.* GOOLSBY.

Opinion delivered January 27, 1894.

1. *Negligence—Permitting infected cattle to run at large.*
A cattle owner who sues a railroad company for turning loose in the range cattle infected with Texas fever, and thereby causing his cattle to become infected and die, cannot recover damages therefor without proving that the company knew, or ought to have known, that the cattle which it turned loose were infected.

2. *Contributory negligence.*
Where the only evidence to show that the company knew that the cattle were infected was its knowledge that they were from infected territory, plaintiff cannot recover if he knew that fact, and yet permitted the infected cattle to enter his enclosure and mingle with his cattle, whereby they became infected.

Appeal from Clay Circuit Court, Western District. JAMES E. RIDDICK, Judge.

Action by J. W. Goolsby against the St. Louis, Iron Mountain & Southern Railway Company. The case is stated by the court as follows:—

Appellee says the railroad company, through the negligence of its employees, wrecked a train-load of cattle which it was transporting from Texas to St. Louis, and negligently permitted said cattle to escape into the range, said cattle being infected with Texas fever, or some other infectious disease, which fact was known to appellant and unknown to appellee; that said infected cattle, commingling with his own, communicated to them the disease which killed four and rendered eight more worthless. For loss of cattle, time, attention and feed, he says he was damaged in the sum of $750. The appellant denies the several allegations of the complaint, as laid, and alleges that whatever damages plaintiff (appellee) sustained were the result of his own negligence in taking care of and herding his stock.

The appellee, among other things, said that the cattle which were found among his, from the wrecked train, were Texas cattle. While in Texas, he had seen "cattle dying and dead all over the prairies, and asked what the matter was, and they said 'Texas fever.'" He left the bars down at his lot so that the two (which he claims were infected) "could go in and out when they wanted to;" allowed them to go in his lot, and eat up the feed which his cattle had left—green corn, etc. The cattle ranged around the mill, and were with his cattle about ten days. When he heard that there was a reward of five dollars per head offered for them, he left word with Mr. Miller, if any one came for the cattle, to show them, but to make the company pay for it. He

heard of the reward being offered some three or four days after the cattle had been with his; and when they came for the cattle, a few days after, he showed them the cattle, and got the reward. This is enough of the evidence to make intelligible the opinion.

The court declared the law of the case to be as follows, to which no objection was made by the defendant:

"4. You are instructed, that before the plaintiff can recover in this action, he must prove by a preponderance of the evidence each and all of the following facts : (1) That the cattle being transported on defendant's train were infected with Texas fever, or some other infectious disease. (2) That said cattle so infected, or some of them, by the negligence of defendant, were allowed to escape and run at large in Clay county. (3) That said cattle, so having escaped, came in contact with the cattle of plaintiff. (4) That by reason thereof such infectious disease was communicated to plaintiff's cattle. (5) That, by reason of such disease being communicated, plaintiff sustained loss and damage. (6) That defendant's servants in charge of the cattle at the place of wreck knew, or had notice, at the time, that the cattle being transported were infected with such disease, or that they were from a section infected with such disease, and were liable to communicate the disease to other cattle in the neighborhood of the wreck, in case they were allowed to escape and run at large. If all these facts are proved, the finding should be for plaintiff."

"5. You are instructed that it is not negligence to allow cattle, or other domestic animals, to run at large, nor can the owner, possessor, or bailee be held liable for damages resulting therefrom by reason of said animals communicating an infectious disease to other cattle, unless it be shown that the fact that the animals were infected and liable to communicate the disease to

other animals was known to the person suffering them to run at large."

The court gave the following prayers over defendant's objection:

"3. While the burden is upon the plaintiff to prove his own case, yet, if the plaintiff makes out a case, and the defendant relies upon contributory negligence on part of plaintiff to defeat his action, the burden to prove such contributory negligence is on the defendant, unless it appears from evidence on the part of plaintiff.

"6. Even if you believe, from the evidence, that the disease with which plaintiff's cattle were affected was communicated to them from the stray cattle which escaped from the wrecked train, and that defendant was guilty of negligence in permitting such cattle to go at large, yet, if you further find that plaintiff knew or had notice that such stray cattle were from the wrecked train, and that they were Texas cattle, and from a district infected with Texas fever, and liable to communicate disease, and that, with this knowledge, he negligently permitted such cattle to frequent the pen in which his own cattle stayed, and this contributed in any respect to his own injury, you will find for defendant—for the reason that, when the wrong of both parties contributed to the injury, the law declines to apportion the damages, and leaves the injured party without any compensation."

*Dodge & Johnson* for appellant.

1. *Scienter* on part of defendant was charged in the complaint, but not shown nor attempted to be shown on the trial by any testimony whatever. 37 Kas. 133; 38 *id*. 550; 80 Mo. 207; 35 Mo. App. 494; 37 *id*. 593; 24 Mo. 199–202; 2 Robertson, 326; 45 Ill. 12; 2 Exch. Rep. 331–338; 139 Mass. 208.

2. Knowledge or notice was a prerequisite. 16 Pac. Rep. 955.

*G. B. Oliver* for appellee.

1. The cattle were from Texas—from an infected district. If they were not from Texas, and not from an infected district, it would have been very easy for defendant to have shown it. It was a matter peculiarly within the knowledge of its employees, and the non-production of evidence clearly within the power of the party creates a strong presumption that, if produced, it would be against him. 32 Ark. 337 ; 48 *ib.* 498.

2. It was not necessary to prove the acts of Congress, the proclamations of the President, or the boundaries of the infected districts. Courts take judicial knowledge of these facts. 12 Am. & Eng. Enc. Law, p. 154; 46 N. W. 1005; 3 So. Rep. 793; 83 Ky. 606. If defendants shipped cattle from an infected district, it is not required to prove absolute knowledge that they were in fact infected. 25 Pac. Rep. 992.

3. The evidence supports the verdict.

WOOD, J., (after stating the facts.) The court declared the law correctly. *Scienter* was averred and denied. Hence the *onus* was upon appellee to show that appellant knew, or had notice of such facts as would make it chargeable with knowledge, that the cattle were infected, and liable to communicate the disease.

*1. As to permitting infected cattle to run at large.*

No actual knowledge of the infected condition of the cattle is brought home to the company. But appellee contends that, it being shown that these were Texas cattle, and that Texas is infected territory, these facts were sufficient to charge appellant with knowledge that the cattle being transported by it on this occasion were infected, and of a kind to communicate their infection to other cattle upon the range where they escaped.

In its last instruction the court told the jury that if plaintiff (appellee) "knew or had notice that such stray cattle were from the wrecked train, and that they were Texas cattle, and from a district infected with

*2. Contributory negligence.*

Texas fever, and liable to communicate disease, and that with this knowledge he negligently permitted such cattle to frequent the pen in which his own cattle stayed, and this contributed in any respect to his own injury, you will find for the defendant, for the reason that when the wrong of both parties contributed to the injury the law declines to apportion the damages, and leaves the injured party without compensation." If the theory contended for by counsel be correct (which it is unnecessary to decide) the same rule which charges the railroad company with knowledge charges appellee with knowledge; and the above instruction, when applied to the facts, makes the verdict of the jury clearly erroneous. For the case which appellee has made for himself by his own evidence is this: He knew these were Texas cattle; he knew Texas was infected territory; he had been forewarned of the great danger from Texas fever, for "*he had seen lots of it, had seen cattle* dying and dead all over the prairies" in Texas. Yet, knowing the dread consequences of this pestilential fever, it appears that he provoked two of the train-wrecked and bruised brutes, with luscious provender, to take up at his lot, and permitted them to consociate with his own herd, until they inoculated the whole range round about the mill with the deadly germ from their droppings.

With the knowledge he had of Texas fever, and the knowledge he ought to have had (applying to him the same rule his counsel would have us apply to the railroad) of infected animals, ordinary prudence, even the slightest consideration for the safety of his own cattle, would have suggested the urgent necessity, upon the first discovery of these infected cattle with his own, of isolating them, or driving them to the nearest station, a short distance away, or else to have immediately notified the railroad officials, who, it appears, were anxious to

have information concerning them.    Instead of doing this, he waited for the reward.

If the learned counsel be correct in his theory with reference to the appellant being charged with knowledge of the infection, his client, being also charged with such knowledge, has certainly contributed to his own hurt.

If this theory be not correct, and he depends upon the actual knowledge of the company, without any knowledge of his own, as he alleges in the complaint, then is the verdict entirely without evidence to support it.

Upon any view presented by this record, the verdict and judgment is erroneous.

Reversed and remanded.