Ballentine v. State.

## BALLENTINE V. STATE.

1. INDICTMENT: *Gaming in a dram-shop.*
   An indictment for permitting gaming in a "dram-shop or grocery" is not uncertain. The word "grocery," if intended as a synonym for dram-shop, is harmless; if used in a different sense, it is surplusage and to be disregarded, the real offense being the permitting of gaming in a dram-shop.

2. CRIMINAL PRACTICE. *Erroneous instruction and verdict; correction by court.*
   When under misdirection of the court as to the maximum penalty to be imposed upon a misdemeanor the jury assesses a fine above the maximum allowed by law, the court may cure the errors by reducing the fine assessed to the proper maximum.

3. SAME: *Forfeiture of license for violating liquor law.*
   The forfeiture of a dram-shop keeper's license for permitting gaming in his dram-shop is a consequence of his conviction. The jury have nothing to do with it, and are not to be instructed about it.

4. LIQUOR. *Violating license; forfeiture.*
   When a dram-shop keeper is convicted by a jury of violating his license, whether he is keeping for himself alone, or in copartnership with another, the license should be declared forfeited, whether it was issued in his name or another's.

5. BILL OF EXCEPTIONS: *Practice in Supreme Court.*
   When a bill of exceptions states only the substance of the testimony, this court will look to it only to explain the bearing of the rulings or instructions excepted to. When a defect of proof is the ground of exception, all the evidence connected with the supposed defect must be set out.

APPEAL from *Garland* Circuit Court.
Hon. J. B. Wood, Judge.

*L. Leatherman* and *G. W. Murphy*, for appellant.

The indictment is uncertain.. It charges that the defendant kept a "grocery *or* dram-shop." The words have not the same meaning.

The word "grocery" is not mentioned in *sec. 1856, Mansf. Dig.;* nor is it an offense to permit gaming in a grocery.

The court should have given all of section 1856 in its charge to the jury.

The court, on its own motion, gave in charge to the jury that they could assess a fine against the defendant not exceeding $250, or could imprison him not exceeding twelve months, or they might to do both.

The jury rendered a verdict of guilty, finding defendant $60.

It is evident, from the weak nature of the evidence, its want of application, the length of time the jury remained out, that this was something of a compromise verdict, and the defendant was prejudiced thereby.

The action of the court in reducing the same was not proper in a criminal trial. His instructions as to the amount of fine and imprisonment were erroneous, and the defendant was entitled to a trial, under the law, as it was.

It is not reasonable to suppose that the verdict of the jury would have been as rendered, or that it would have been for $50 had the court, in the instructions, limited them to that amount.

The penalty for violating section 1856 is set out in section 1859. This chapter of Mansfield's Digest does not contain the law as it is. (See *sections 9 to 14, chapter 148,*

*Revised Statutes; in Gould's Digest, chapter 169, sections 14–19.*)

It was error in the court to forfeit the license under the proof, the instructions and finding of the jury.

Under the instructions of the court the jury may have found the defendant guilty of committing the offense charged in the indictment at any time within one year prior to the 10th of April, 1886. Now, if the offense was committed before the 1st of January, 1886, then the license issued on or after 1st of Janury, 1886, should not be canceled, no matter if Ballentine was interested in the same.

The proof does not show that Ballentine had a license, or was interested in the license of Thatcher, further than the rent of his building. This is not sufficient interest on which to warrant a conviction for a fine, much less a forfeiture.

*First*—It is necessary for the defendant to have a license to keep a tavern or dram-shop (not grocery).

*Second*—And he must knowingly and unlawfully permit some one to play at a game of craps within his house.

There is no evidence showing that a game of craps, or a game of hazard with dice, commonly called craps, was played in the house.

*Dan W. Jones*, Attorney-General, for appellee.

The appellant was indicted for an infraction of *sec. 1856 of Mans. Dig.*, in permitting gaming in his " dram-shop or grocery." It is argued that the use of the word " or " is fatal in the indictment on account of duplicity and uncertainty. The word " grocery " not appearing in the above cited statute, it was no offense to permit gaming therein, and it was mere surplusage to place it in the indictment. *Shepherd v. The State, 39 Ark., 39 ; Bish. Stat. Cr., 426–7.*

Ballentine v. State.

Beside this the proof showed that the place where the gaming was done was the dram-shop, and not any grocery store, and it was for this the jury found.

The appellent had the license from the United States in his own name, while the state and county license was in the name of Thatcher. The court found that appellant was the real party holding said last mentioned license, and revoked it. If this finding of fact by the court was correct and the appellant was guilty as charged, this was but carrying out the law. If Thatcher really owned the license, then appellant is in no manner hurt by its revocation, and Thatcher is left to proceed as he may see fit. The judgment should stand.

1. INDICT-MENT for gaming in dram shop. COCKRILL, C. J. Ballentine was indicted for permitting gaming in his " dram-shop or grocery." It is argued that the use of the words " dram shop " and " grocery," accompanied by the disjunctive " or," renders the indictment uncertain. The word " grocery " does not appear in the statute which defines the offense. (*Mans. Dig.*, *sec. 1856*) If it is intended as a synonym for " dram-shop " it is harmless. If it was used in a different sense it is surplusage merely, and should be disregarded, the real offense being the permitting of gaming in the dram-shop.

2. CRIMINAL PRACTICE: Errors cured by court. II. The court instructed the jury that the maximum punishment that could be meted out to the defendant, if he was guilty, was a fine of $250 and imprisonment for not exceeding twelve months, and refused to read to them that portion of the statute which works a forfeiture of the dram-shop license in case of conviction. A fine of $50 in addition to the forfeiture of the license is, in fact, the maximum punishment for this offense. (*Ib.*, *1859*) The jury assessed the fine at $60. The court remitted $10 of the amount, and entered judgment for the maximum fine, $50.

Ballentine v. State.

This was not reversible error. [1] The statute authorizes the remitter in such cases. (*Mans. Dig., sec. 2309.*) [2] The instruction of the court as to the maximum punishment was erroneous, but as the fine imposed is no greater than that authorized by the statute, the defendant was not prejudiced by it. (*Dudney v. State, 22 Ark., 251.*) [3] The forfeiture of the license is a consequence of conviction. It is not a part of the penalty to be assessed by the jury. They have no discretion about it, and it was not error in the court to refuse to charge them in regard to it. 3. Forfeiture of license.

III. The license that was declared forfeited by the judgment of the court had been issued, not to the defendant himself, but to one Thatcher. The testimony tended to show that the defendant was the real party in interest and the active proprietor of the dram-shop, and the verdict of the jury shows that they took that view of the matter The law deals with realities, and its administration is not deterred by shams and makeshifts. When the proof showed that Ballentine was the guilty dram-shop keeper, whether keeping for himself alone or in copartnership with Thatcher, it was proper to declare a forfeiture of the the license under which he operated, and it mattered not in whose name it was written. (See *Brockway v. State, 36 Ark., 629.*) As to the effect of this judgment on Thatcher's rights under the license, the case will be determined when it arises. 4. SAME: Partners.

IV. It is argued further that it is not shown by proof that the particular game charged in the indictment was played in the house. The answer to this is that the bill of exceptions purports to set forth the effect of the testimony without giving the details of the evidence. The narrative, in one instance, runs thus: "That Frank Blair, who ran the games in the saloon building, stated that he obtained permission" from Ballentine, etc. This is in the statement 5. Bill of exceptions

4-48

of the substance of the proof for the prosecution. The presumption is that the games referred to include the games described in the indictment.

But when the bill of exceptions brings the substance merely of the evidence upon the record, it is looked to by this court only to explain the bearing of the rulings or instructions that are challenged. When a defect of proof is the ground of exception, all the evidence in anywise connected with the supposed defect must be set out. (See Rule 13 of this court, *44 Ark.*, *p. 12.*) Doubtless if Blair's testimony had been set forth in full, it would have showed that the game described in the indictment was one of the games played. In any event it devolved upon the appellant to show error affirmatively, or the judgment stands.

There was abundance of other evidence from which the jury could infer the defendant's guilty knowledge of the gaming.

There is no error shown by the record, and the judgment is affirmed.