STATE *v*. MULLINS.

Opinion delivered February 3, 1900.

WINE—UNLAWFUL SALE—NEGATIVING EXCEPTIONS.—An indictment which alleges that accused on a day named unlawfully sold wine in a certain township and county "when and where the majority of the votes cast at the last general election voted against the sale of wine," without alleging the quantity sold, alleges the commission of a public offense, under Sand. & H. Dig., § 4851, as, if accused, being a manufacturer of wine, sold wine in original packages of not less than five gallons (under Sand. & H. Dig., § 4851), or if he sold wine made from grapes or berries grown by him in quantities not less than one-fifth of a gallon (under act March 29, 1899), either would be matter of defense. (Page .425)

Appeal from Garland Circuit Court.

ALEXANDER M. DUFFIE, Judge.

*Jeff Davis, Attorney General,* and *Chas. Jacobson,* for appellant.

Section 1 of the act of 1897 is not repealed by section 1 of the act of 1899.

WOOD, J. Appellee was indicted at the September term of the Garland circuit court for violating the wine law. The indictment, omitting the caption, is as follows: "The grand jury of Garland county, in the name of and by the authority of the State of Arkansas, accuse Randolph Mullins of the crime of violating the wine law, committed as follows, to-wit: The said Randolph Mullins, in the county and state aforesaid, on the 12th day of August, 1899, did unlawfully sell wine in the township of Lincoln and in said county, when and where the majority of the votes cast at the last general election voted against the sale of wine, against the peace and dignity of the State of Arkansas."

Appellee demurred to the indictment upon the following grounds: "First. Because it does not state facts sufficient to constitute a public offense. Second. Because it does not state

that the people of Lincoln township in Garland county had petitioned the county court of said county for an order prohibiting the sale of native wine therein, and that an order prohibiting such sale had been made by said court.   Third.   Because the indictment does not allege the quantity of wine sold."

The court sustains the demurrer, and the state appeals from the judgment discharging the defendant.

Section 4867, Sand. & H. Dig., is as follows:   "At each general election for state officers there shall be submitted to the qualified electors of each county the question as to whether license shall or shall not be granted by the county court of such county for the sale of alcohol, or of spirituous, vinous, ardent, malt or fermented liquors, or any compound or preparation thereof, commonly called tonics, bitters or medicated liquors, in any quantity or for any purpose, within such county, for the two years commencing on the first of January next ensuing. In voting upon said question, the electors shall have printed or written upon their ballots 'For license' or 'Against license.' Provided, this section shall not apply to persons engaged in the manufacture of brandies or liquors who sell them in the original packages only."

An act entitled, "An act to regulate the sale of wine," approved June 26, 1897, (so far as is necessary to set it out) is as follows:   Section 1.   At the general election when the vote is taken 'For license' or 'Against license,' the sale of wine shall not be affected by that vote, but a separate vote 'For the sale of wine' or 'Against the sale of wine' shall be taken in the same manner as the vote on license.

"Section 2.   When the county court is petitioned to prohibit the sale of liquors under the three mile law, the petition may specify all kinds of liquors as now provided by law, or may specify wine as the only liquor to be prohibited, or may except wine from the petition.

"Section 3.   If it shall appear that the people of any county, township or ward of a city, or if any 'three mile district' under the operation of present laws, as modified by the two preceding sections, are not opposed to the sale of wine, and if there be no provisions in special acts or orders of courts for-

bidding the sale of wine, then it shall be lawful for any person who grows or raises grapes or berries to make wine thereof and without license sell the same in any quantities not less than one-fifth of a gallon anywhere in the state, except in counties, townships or wards of cities, or three mile districts, or under districts under special acts where the people have voted or petitioned or secured special laws against the sale of wine.

"Section 4. All wine sold in the state shall, before sale, be labeled so as to designate their qualities. Nothing but pure fermented juice of the grape or berry shall be labeled 'Natural Wine.' Wine to which sugar has been added, to insure its keeping qualities, shall be labeled 'Sugared Wine.' "

An act entitled "An act to regulate the sale of native wine, and other purposes," approved March 29, 1899, provides:

"Section 1. Any person who grows or raises grapes or berries may make wine thereof and sell the same in quantities not less than one-fifth of a gallon, or in sealed bottles, anywhere in the state without license when the same has been properly labeled, as provided for in section two (2) of this act; provided, that the people shall have the right to petition the county court to prohibit the sale of native wine as now provided by law, but native wine shall not be included under section 4877 of Sandels & Hill's Digest, unless by special petition against wine; *provided further*, that the growers of wine, as above mentioned, shall have the right to sell the same in original packages of not less than five gallons, as is now granted to manufacturers and distillers of whisky and brandy, under section 4851, Sandels & Hill's Digest.

"Section 2. All wine sold in this state shall, before sale, be labeled so as truly to designate its kind and quality. Nothing but the pure fermented juice of the grape or berry shall be labeled 'Natural Wine.' Wine to which sugar has been added before fermentation shall be labeled 'Sugared Wine.' The label shall also state if the wine be sweetened or unsweetened.

"Section 3. It shall be unlawful for any one to sell wine containing poisonous or injurious ingredients, or to sell any wine to which alcohol has been added. If any wine shall con-

tain more than 17 per cent. of alcohol, it shall be final and conclusive proof that alcohol has been added to the same."

Then follow the penalty and other provisions.

Construing the above statutes with reference to the sale of wine, we reach the following conclusions:

First. That, since the passage of the act of 1897, at each general election for state officers there shall be submitted to the qualified electors of each county the question as to whether license shall or shall not be granted "for the sale of wine" or "against the sale of wine." The vote on such question is to be taken in the same manner as the law prescribes for taking the vote on license for the sale of other liquors. There must be a separate vote "for the sale of wine" or "against the sale of wine." If a majority of the votes upon the question in the county be "for the sale of wine," and likewise a majority of those voting upon the question in any township or ward of a city be cast "for the sale of wine," then, but not until then, shall it be lawful for the county court to grant licenses for the sale of wine in such townships or wards.

Second. Those who grow or raise grapes or berries may make wine thereof, and sell the same in original packages of not less than five gallons, notwithstanding the majority of the votes in the county, township or ward of a city where such original packages are sold may be "against the sale of wine."

Third. Section 1 of the act of 1899 refers solely to native wine, or wine made by those who raise or grow the grapes or berries from which the wine is made.

It follows that the demurrer should have been overruled. The indictment charged the commission of a public offense, under section 4851 of Sandels & Hill's Digest. It was not essential that the indictment specify the quantity of the wine sold nor the price. If the appellee sold native wine in quantities not less than one-fifth of a gallon, or sold wine in original packages of not less than five gallons, these were exceptions that he could set up by way of defense. They were enactments subsequent to the statutes prohibiting the sale of wine. Crawford's Digest, and cases cited under title, CRIMINAL LAW, VI, g, "Negations of Defenses and Exceptions." Reversed and remanded with directions to overrule the demurrer.