. KANSAS CITY SOUTHERN· RAILWAY COMPANY *v.* STATE.

Opinion delivered May 3, 1909.

1. ANIMALS—VALIDITY OF QUARANTINE STATUTE.—The quarantine act of 1907 (Acts 1907, p. 1043) is not in conflict with any provision of the acts of Congress upon this subject, nor with any regulation thereof. prescribed by the Commissioner of Agriculture. (Page 346.)

2. SAME—The quarantine act of 1907 (Acts 1907, p. 1043) is a valid exercise of the State's police power for the protection of the property of its people from the danger of the communication of disease, and does not conflict with the paramount authority of Congress to regulate interstate commerce. (Page 347.)

3. SAME—INDICTMENT FOR VIOLATION OF QUARANTINE ACT—SURPLUSAGE.— An indictment of a railroad company for violating section 12 of Acts 1907, p. 1048, which charges that defendant unlawfully received cattle for transportation from a point in another State below the quarantine

line, and unlawfully transported same across said line, and unlawfully unloaded same at a point above such line, charges a single offense; so much of the indictment as alleges the receipt of the cattle and their transportation being surplusage.  (Page 349.)

4.  CRIMINAL LAW—INDICTMENT—NEGATION OF EXCEPTIONS.—An indictment for a statutory offense need not negative an exception contained in a proviso therein.  (Page 349).

5.  EVIDENCE—EXECUTIVE RULES—JUDICIAL NOTICE.—When a statute authorizes executive officers to make general rules for the conduct of public business, and such rules are duly made and published, the courts will take judicial notice of them.  (Page 349.)

Appeal from Benton Circuit Court; *J. S. Maples,* Judge; reversed.

*Read & McDonough,* for appellant.

The statute under which appellant is indicted is void because in conflict with the act of Congress of June 29, 1906.  The act attempts to regulate interstate commerce, and is void.  The indictment charges more than one offense; the demurrer should, therefore, have been sustained.  45 Ark. 62.  But, even if the act is valid, the indictment is insufficient, because it fails to negative the exceptions in the act.  Verdict should have been directed for appellant, for the reason that the State failed to prove the allegations in the indictment.

*Hal L. Norwood,* Attorney General, and *C. A. Cunningham,* Assistant, for appellee.

The act does not conflict with the Interstate Commerce Act.  169 U. S. 133.  It was passed in the exercise of the police power of the State, and such statutes it has a right to enact.  27 Vt. 14.  A legislative act will be permitted to stand unless it is clearly in derogation of and repugnant to some act of Congress on the same subject.  22 How. 227.  The statute was passed in aid of the acts of Congress on the same subject.  12 How. 299; 93 U. S. 99; 128 *Id.* 96; 118 *Id.* 455; 124 *Id.* 465; 128 *Id.* 96; 163 *Id.* 299; 169 *Id.* 613; 165 *Id.* 621; 169 *Id.* 133; 77 Ark. 489.  That part of the indictment relating to the transportation of the cattle across the quarantine line charges no crime under the statute, is surplusage, and will not be considered.  19 Ark. 578; *Id.* 636; 48 *Id.* 45; 49 *Id.* 499; 55 *Id.* 365; 60 *Id.* 521.

This court will review the finding of the jury only when there

is a total want of evidence to sustain it.   15 Ark. 540; *Id.* 403; 23 *Id.* 61 ; 21 *Id.* 306; 23 *Id.* 131 ; 40 *Id.* 168.

FRAUENTHAL, J.  The defendant, a railroad company, was in dicted by the grand jury of Benton County and charged with violating the provisions of section 12 of an act of the General Assembly of Arkansas, entitled "An act to prevent the introduction and spread of contagious and infectious diseases in Arkansas," approved May 28, 1907.   Acts of 1907, p. 1043.   The indictment is as follows:

"The grand jury of Benton County, in the name and by the authority of the State of Arkansas, accuse the Kansas City Southern Railroad Company of the crime of transporting and unloading cattle above the quarantine line in the State of Arkansas without proper certificate of inspection, committed as follows, to-wit:

"The said Kansas City Southern Railroad Company in the said county of Benton in the State of Arkansas, on the 18th day of January, 1908, being then and there a railroad company engaged in operating a railroad over and across the west end of Benton County in the State of Arkansas, from north to south, and entering and running over and across the State of Oklahoma, unlawfully did receive three cattle for transportation over the said line of railroad from J. G. Deen at Spiro, Oklahoma, a point on its said line of railroad below the cattle quarantine line established by the United States Department of Agriculture and the district cattle quarantine line of the State of Arkansas, the destination of said cattle being Anderson, Missouri, a point on its said line of railroad, and did unlawfully transport said cattle on its railroad across said quarantine line, running from the northwest corner of Benton County south along the line between the State of Arkansas and the State of Oklahoma to the southwest corner of Benton County, and then east along the south line of Benton County, and did unlawfully unload said cattle at the town of Gravette, in Benton County, a point above said · district cattle quarantine line and not designated by the board of control of the Agricultural Experiment Station under any restriction prescribed by the United States Department of Agriculture, when said cattle were accompanied by a certificate of inspection of neither a Federal nor State veterinary inspector, against the peace and dignity of the State of Arkansas."

To this indictment the defendant interposed a demurrer upon the ground that it did not state facts sufficient to constitute a public offense under the laws of the State of Arkansas; and because the indictment is indefinite and uncertain; and also because it charges more than one offense. The court overruled the demurrer; and the defendant filed a written answer which, upon the motion of the State, was stricken from the files. Upon a trial of the case, the jury assessed a fine of $125 against the defendant. And from the judgment entered upon said verdict the defendant prosecutes this appeal.

It is urged by the defendant that this statute of the State of Arkansas is void, because it is in conflict with the acts of Congress on the subject of the transportation of live stock; and because it affects interstate commerce, of which it claims the State and its courts have no jurisdiction.

By an act approved May 29, 1884, entitled "An act for the establishment of a Bureau of Animal Industry to prevent the exportation of diseased cattle and to provide means for the suppression and extirpation of pleuro-pneumonia and other contagious diseases among domestic animals," the Congress of the United States authorized the Commissioner of Agriculture to organize a Bureau of Animal Industry, and to prepare such rules and regulations as he might deem necessary for the suppression and extirpation of such diseases, and to invite the authorities of each State to co-operate in the execution and enforcement thereof. (Compiled Statutes of United States, p. 3184.) Nowhere in said act of Congress, nor in the rules and regulations prescribed by the Commissioner of Agriculture thereunder, is it attempted to assume the exclusive control over the subject of the quarantine of diseased animals. On the contrary, the act authorizes the Commissioner of Agriculture to co-operate with the State authorities and to prescribe the rules and regulations in this regard. In pursuance of that authority, the Commissioner of Agriculture did, on March 22, 1907, and on April 15, 1907, adopt and promulgate regulations relative to the "inspection, disinfection, certification, treatment, handling and method and manner of delivery and shipment of live stock," and for the guidance of all persons and corporations concerned in the handling or movement of live stock. In these regulations there is expressly recognized the right and authority

of the State to establish a State quarantine for cattle affected
with splenetic fever. (Regulation No. 12 Commissioner of Agri-
culture, effective April 15, 1907.) It is claimed that by section
6 of said act of Congress approved May 29, 1884, it is provided
that "the so-called splenetic or Texas fever shall not be considered
contagious" within the meaning of certain sections of that act.
But that act and subsequent acts of Congress (act of Congress ap-
proved February 2, 1903, and act approved March 3, 1905) ex-
pressly empowered the Commissioner of Agriculture to prepare
regulations for the suppression of the spreading of said diseases
of live stock, and gave to that official authority to make, change
and alter the same. (Supplement to Compiled Statutes of United
States, 1907, pp. 924 and 925.) And by the regulations prepared
and adopted by said Commissioner of Agriculture and effective
April 15, 1907, the so-called splenetic or Texas fever was consid-
ered a contagious, infectious and communicable disease, within the
meaning of the act. Congress, by said act, approved February 2,
1903, entitled "An act to enable the Secretary of Agriculture to
more effectively suppress and prevent the spread of contagious and
infectious diseases of live stock and for other purposes," expressly
provided that whenever any inspector or assistant inspector of
the Bureau of Animal Industry shall issue a certificate showing
that he had inspected the cattle about to be shipped "and had
found them free from Texas or splenetic fever infection," such
animals may be shipped.

In co-operation with the authorities of the United States and
in accordance with these acts of Congress and the regulations of
the Commissioner of Agriculture, the General Assembly of the
State of Arkansas enacted this quarantine statute. So that this
statute of Arkansas is not in conflict with any provision of the
act of Congress or of any regulation prescribed by the Commis-
sioner of Agriculture. These rules and regulations adopted by
the Commissioner of Agriculture were a valid exercise of power
granted by the act of Congress. *Field* v. *Clark,* 143 U. S. 649;
*Buttfield* v. *Stranahan,* 192 U. S. 470; *Union Bridge Co.* v. *United
States,* 204 U. S. 364.

This act of the General Assembly of Arkansas is not void
on the ground that the Federal government has exclusive juris-
diction in interstate commerce. This law is a quarantine measure,

and therefore a rightful exercise of the police power of the State for the protection of the property of its people from the danger of the communication of disease. And where such enactments are reasonable, and do not go beyond the necessities of the case, they have been uniformly upheld. The Supreme Court of the United States, in speaking of such enactments in the case of *Kimmish* v. *Ball,* 129 U. S. 217, says: "We are unable to appreciate the force of the objection that such legislation is in conflict with the paramount authority of Congress to regulate interstate commerce." And in that case, speaking of an act of the State excluding diseased Texas cattle, that court says: "Certainly all animals thus infected may be excluded from the State by its laws until they are cured of the disease or at least until some mode of transporting them without danger of spreading it is devised." In re *Rahrer,* 140 U. S. 545; *Missouri, Kansas & Texas Ry. Co.* v. *Haber,* 169 U. S. 613; *Smith* v. *St. Louis S. W. Ry. Co.,* 181 U. S. 248.

But, in addition to this, the entire subject of the transportation of live stock from one State to another has not been taken under direct national jurisdiction by Congress, and a system established by which diseased stock shall be excluded from interstate commerce.

In the case of *Reid* v. *Colorado,* 187 U. S. 137, it has been held that the above act of Congress establishing a Bureau of Animal Industry, approved May 29, 1884, does not cover the transportation of live stock from State to State, so as to preclude the enactment of laws by the State for the protection of the property of the State. In that case it is said: "While the States were invited to co-operate with the General Government in the execution and enforcement of the act, whatever power they had to protect their domestic cattle against such diseases was left untouched and unimpaired by the act of Congress. Hence it was decided that the Animal Industry Act did not stand in the way of quarantine State statutes." See also *Rasmussen* v. *Idaho,* 181 U. S. 198.

This statute of the State of Arkansas, as it appears from the act itself, is a quarantine measure. It was not enacted for the absolute prohibition of all cattle from its borders, but for the purpose of regulating the exclusion of diseased cattle; and its provisions are in conformity with the regulations of the United

States Department of Agriculture. So that the act is a valid exercise of the power of the State within its legitimate jurisdiction.

It is urged that the indictment charges more than one offense: that it charges the offense of unlawfully receiving three cattle for transportation over its line of railroad at Spiro, Oklahoma; that it charges the offense of unlawfully transporting said cattle across the quarantine line, and that it charges the offense of unlawfully unloading the cattle at Gravette in Benton County. We do not think there is any merit in this contention. The statute makes it an offense for any railroad company carrying cattle from other States below the quarantine line to unload same at any point in Arkansas above said quarantine line with certain exceptions. That portion of the indictment describing the defendant as receiving the cattle at Spiro and transporting them across the quarantine line is only descriptive of the defendant as a railroad company carrying cattle from other States below the quarantine line; and the use of the words of "unlawfully" receiving and "unlawfully" transporting is merely surplusage. *Ballentine* v. *State,* 48 Ark. 45; *State* v. *Bledsoe,* 47 Ark. 233; *Moose* v. *State,* 49 Ark. 499; *Downs* v. *State,* 60 Ark. 521. Nor do we think that there is any merit in the contention of the defendant that the indictment is defective because it does not negative the exceptions that are in the statute. The indictment does sufficiently negative the exceptions that are in the enacting clause of the act, and it was not necessary for it to negative the exception in the proviso. *State* v. *Devers,* 38 Ark. 517; *Glass* v. *State,* 45 Ark. 173; *Cleary* v. *State,* 56 Ark. 124; *State* v. *Mullins,* 67 Ark. 422; *Richardson* v. *State,* 77 Ark. 321.

Objections were also made to certain instructions given by the court; but we do not think any error was committed in giving them. But the serious question involved in this case is whether there is sufficient evidence to sustain the verdict. In pleading the material allegations constituting the offense created by the said act of the General Assembly of Arkansas, approved May 28, 1907, the indictment charged that the cattle were received by defendant at Spiro in the State of Oklahoma, and by defendant were carried from that State across the quarantine line, from a point below said line and into Benton County, and unlawfully

unloaded at Gravette in said county. It was necessary, therefore, before a conviction could be had, to prove by competent testimony that defendant received the cattle at a point in another State below the quarantine line, and did transport them across the quarantine line and to a point in Benton County, Gravette, above the quarantine line, and there unlawfully did unload same. Now, the courts will take judicial notice of the rules and regulations adopted by the Commissioner of Agriculture and the officials under the authority given by Congress and the State Legislature for the suppression and extirpation of the above disease and the quarantine of animals under the purview of the said statute of Arkansas. "When a statute authorizes executive officers to make general rules for the conduct of public business, and such rules are duly made and published, the courts will take judicial notice of them." 7 Enc. of Evidence, 990; 16 Cyc. 903; *Caha* v. *United States,* 152 U. S. 211. So that the points which may be designated by the board of control of the Agricultural Experiment Station or by the regulations adopted by the Commissioner of Agriculture where cattle may be unloaded, and the location of the quarantine lines, are matters that the court will take judicial notice of; and therefore it could not be prejudicial error for a witness to state those matters which the court already knew. In addition to this, the location of the quarantine line is fixed by the public act of the General Assembly of Arkansas, approved March 25, 1907. (Acts 1907, p. 267.)

But the difficulty in this case is that there is a total lack of evidence showing that the defendant received the cattle at a point in another State; a total lack of evidence that defendant transported or carried said cattle from a point below the quarantine line and across the quarantine to a point above it in Benton County. The only witnesses introduced in the trial of this case were the two veterinary inspectors of the Department of Agriculture and the local depot agent of defendant at Gravette. The two inspectors arrived at Gravette to examine the cattle several days after the cattle had been unloaded. They testified that they did not see the cattle unloaded, and did not know by whom they were unloaded; and did not know from what point they were carried, nor over what route the cattle were transported. They found, however, that the cattle were affected with

splenetic or Texas fever. The local agent of defendant said the defendant unloaded the cattle at Gravette; but he did not testify that he knew, and he did not testify as to what point the cattle were shipped from, and did not testify that he knew and did not testify as to what route they were carried over. So that there was no evidence as to these material allegations of the indictment. And for this reason the verdict of the jury is not sustained by the evidence, and therefore the judgment of the court must be reversed.

Judgment reversed and cause remanded for a new trial.