The judgment is therefore reversed and the cause remanded for a new trial.

ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* CAMPBELL.

Opinion delivered January 4, 1915.

1. CATTLE QUARANTINE—LIABILITY OF RAILROADS—TRANSPORTING CATTLE. —It is unlawful for any railroad company carrying cattle from other States or Territories below the quarantine line established by the United States Department of Agriculture, or from below the district cattle quarantine line of this State, to unload such cattle at any point in the State above the district cattle quarantine line, except such points as are designated by the officials in charge of the enforcement of the law establishing quarantine. Act 409, Acts 1907.

2. CATTLE QUARANTINE—TRANSPORTATION OF CATTLE—LIABILITY OF RAILROAD COMPANY.—In the transportation and unloading of cattle, a railroad company is required to comply with the act of Congress of March 3, 1905, chapter 1496, 33 St. L. 1264, and Act 409, Acts of Arkansas of 1907, and in an action for damages growing out of a violation thereof, it is not necessary to charge the railroad company with knowledge that cattle brought from below the quarantine line and unloaded above it were infected or infested with the fever tick, since, if the cattle were transported and unloaded in compliance with the quarantine laws, the duty rested upon the railroad company to show such compliance in justification of its conduct in carrying the cattle over the quarantine line.

3.    CATTLE QUARANTINE—UNLOADING CATTLE—LIABILITY OF RAILROAD COM-
      PANY.—In an action against a railroad company for damages grow-
      ing out of unloading cattle above the quarantine line; *held*, the
      evidence failed to show that the cattle so unloaded were from a
      tick-infested country, or that they communicated disease to the
      plaintiffs' cattle.

Appeal from Lawrence Circuit Court, Eastern Dis-
trict; *W. A. Cunningham,* Special Judge; reversed.

### STATEMENT BY THE COURT.

C. C. Campbell, appellee, and nine others brought
separate suits against the St. Louis, Iron Mountain &
Southern Railway Company, appellant, for damages for
loss of their cattle alleged to have been caused by the
negligence of the railroad company in transporting in-
fected cattle from below the quarantine line across it and
unloading them at Alicia, a point above the line from
which their cattle became infected with the fever and died.

It appears from the testimony that a wreck occurred
just below the quarantine line and the door of the car
containing the cattle was torn off and one of them escaped
from the car; that the others were taken on across the
quarantine line and unloaded at Alicia and the one that
escaped was driven along the public road to the stock
pen from which they were all shipped within a day or
two.

There was some testimony tending to show that the
cattle had ticks upon them, but no witness was able to
say they were fever ticks.  About the usual time for the
development of the fever from ticks after the wrecked
car load of cattle was unloaded at Alicia, the cattle in the
community began to get sick with fever and die and the
testimony shows that some of them were infested with
fever ticks.  The testimony further tends to show that
Alicia, while above the quarantine line, was under quar-
antine, in fact during all the year, except the season be-
fore for a few days when the quarantine was lifted.
There was testimony tending to show, however, that there
had been no infection nor fever among the cattle in and
around Alicia for some years and since the establishment

of the quarantine line.   There was no testimony tending to show the point from which the car of cattle was shipped further than one man said he had heard the roadmaster say they were Southern cattle, and this witness also testified that he thought they must be Southern cattle or Texas cattle because of the peculiar brands upon them.

The cases were consolidated upon the trial and verdicts for certain amounts were rendered against the railroad company in each, in favor of the plaintiffs, and judgment thereon.   From the judgment the railroad company prosecutes this appeal.

*E. B. Kinsworthy, Campbell & Suits* and *T. D. Crawford,* for appellant.

1.   Instruction 2 for plaintiff was erroneous.   There is no allegation nor proof that the company knew, or should have known, that the cattle were infected.   The *onus* was on appellee to show this.   58 Ark. 401; 47 Am. St. 653; 23 L. R. A. 73; Act of Congress, March 3, 1905, 33 Stat. L., chap. 1496, pp. 1264, 1265.

2.   The testimony fails to show liability.   Besides *hearsay* testimony was admitted.

*W. P. Smith,* for appellee.

1.   *Railway Co.* v. *Goolsby,* 58 Ark. 401, is not an authority in this case.  *Scienter* was alleged and denied in that case, while here there was no averment of knowledge by the company of infection.   47 Am. St. 653, simply holds that courts take judicial knowledge that Texas or Southern cattle are infected and is in favor of appellee.

2.   It is against the law to unload infected cattle above the quarantine line.   33 St. L. 1264-5; Acts 1907, 266; Kirby's Dig., § § 7907-7916; 90 Ark. 343.   Hence, there was no error in instruction No. 2.

3.   The evidence supports the verdict and the jury were properly charged.

KIRBY, J., (after stating the facts).   It is contended by appellant that it had no knowledge that the cattle necessarily unloaded and collected at Alicia because of the injury to the car in which they were being shipped, were infected with the fever or carried the fever-producing

tick, and that there is no evidence tending to show they were brought from infected territory, nor sufficient to sustain the verdict, and also that the court erred in giving instruction numbered 2 for plaintiff.

In said instruction the court told the jury that if the railroad company had in charge a car of cattle from infected territory, which it caused or permitted to be unloaded at Alicia, and that the cattle of plaintiff were infected with the fever tick and died as a result thereof, and that the infection was communicated to plaintiff's cattle or to the range, and from the range to plaintiff's cattle, by the unloading of the car of cattle in charge of the defendant railroad company, or in the driving of said cattle along the road, it should find for the plaintiff.

(1)    The district cattle quarantine line of the State runs along the boundary line between Jackson and Lawrence counties, being the south boundary line of Lawrence and the north line of Jackson County. The wreck occurred in Jackson County below the quarantine line, and one of the cattle escaped from the car and was driven to the pen, and the others were carried across the line and unloaded above the line at Alicia in Lawrence County. It is unlawful for any railroad company carrying cattle from other States or Territories below the quarantine line established by the United States Department of Agriculture or from below the district cattle quarantine line of this State to unload such cattle at any point in the State above the district cattle quarantine line, except such points as are designated by the officials in charge of the enforcement of the law establishing the cattle quarantine. Section 12, Act 409, Acts of 1907. This law also declares that all cattle above the district quarantine line bearing *boophilus anulatus* ticks should be considered as affected with a contagious disease.

Congress by Act of March 3, 1905, chapter 1496, 33 Stat. L. 1264, provided for the establishment of cattle quarantine districts by the Secretary of Agriculture and that cattle or live stock may be moved from a quarantine State or Territory or the quarantined portion of any

State or Territory into any other State or Territory under and in compliance with the rules and regulations made by the Secretary of Agriculture in pursuance of the act authorizing the establishment of the quarantine district and making it unlawful to move or allow to be moved any cattle from any quarantine district in any manner or under any conditions other than those prescribed by the Secretary of Agriculture.

It is contended that the instruction is erroneous because it did not require the jury to find that the company knew or should have known that the cattle which it turned loose and unloaded at Alicia were infected and that the burden was upon appellees to show that appellant had such knowledge or notice of such facts as would make it chargeable with knowledge that the cattle unloaded were infected and liable to communicate the disease within the principle announced in *Railway Co.* v. *Goolsby,* 58 Ark. 401.

There is no allegation herein as in that case that the company knew or had knowledge of such facts as would make it chargeable with knowledge that the cattle were infected, the allegation being only that the railway company brought infected cattle into Alicia and unloaded them there and that the infection and disease was thereby communicated to plaintiff's cattle.

(2)    The national law prohibits the moving and carrying of cattle from a quarantine State, Territory or district into any other State or Territory, except in compliance with the regulations prescribed by the Secretary of Agriculture, and the State makes it unlawful for a railroad company carrying cattle from any other States or Territories below the quarantine line established by the United States Department of Agriculture or from below the district cattle quarantine line of the State to unload such cattle at any point in Arkansas above the said district quarantine line, except in accordance with the prescribed regulations. The railroad company is bound to comply with the requirements of both these laws

in the carrying and unloading of cattle which dispenses with any necessity for charging it with knowledge that the cattle brought from below the quarantine line and unloaded above it were infected or infested with the fever tick, and liable to communicate the disease if they were in fact so infected. And if the cattle were carried and unloaded in accordance with the regulations prescribed by the officials charged with the enforcement of these laws, it devolved upon the railroad company to show that fact in justification of its conduct in carrying cattle from below and unloading them above the quarantine line, which would otherwise be unlawful.

(3) The majority of the court, however, is of opinion that there is not sufficient testimony to show that the cattle came from infected territory and communicated the fever, there being nothing tending to show such facts further than that a witness heard the roadmaster say they were Southern cattle and another that they must be, from the peculiar brands upon them. The witness who saw the ticks upon the cattle that were unloaded did not know whether they were fever-producing ticks or not, and his description of their color did not indicate that they were. If the railroad company brought cattle from infected territory or cattle bearing ticks that produced the disease among the plaintiff's cattle from which they died, it would of course be liable for the damages, but the mere fact that the fever developed among the cattle about Alicia after the car of cattle was unloaded, with further testimony that for some time prior thereto there had been no infection nor fever among the cattle in and around the place, was not sufficient to show that said cattle were infected or from infected territory and communicated the disease to the cattle of plaintiffs. The station at Alicia is within a short distance of the district cattle quarantine line and it is equally as probable that the disease from which plaintiff's cattle died could have been communicated by cattle or ticks coming from below the quarantine line, which was hard by said station.

For the error designated the judgment is reversed and the cause remanded for a new trial.