PALMER *v.* STATE.

Opinion delivered January 20, 1919.

1. STATUTES—ENACTING CLAUSE—NECESSITY.—The Tick Eradication Law of 1915 (Acts 1915, p. 804) is a nullity under Const., Art. 5, § 19, as it contains no enacting clause.

2. CRIMINAL LAW — JUDICIAL NOTICE — QUARANTINE LINES. — The courts judicially know that the State and Federal cattle quarantine lines in Arkansas are identical.

3. ANIMALS—FAILURE TO DIP—EVIDENCE.—In a prosecution for failure to dip cattle within quarantine area where the county was not brought within quarantine area prior to certain date, evidence that defendant failed to dip his cattle before that date was inadmissible.

4. ANIMALS—TICK ERADICATION—FAILURE TO DIP—INDICTMENT.—An indictment for failure to dip cattle within quarantine area *held* sufficiently to state public offense, though it fails to allege that board of control of agricultural experiment station had made and promulgated rules requiring dipping.

5.  CRIMINAL LAW — JUDICIAL NOTICE — CATTLE DIPPING RULES.—The
    Supreme Court will take judicial notice of cattle dipping rules
    promulgated by board of control of agricultural experiment sta-
    tion, and they need not be alleged in indictment or proved.

Appeal from Pike Circuit Court; *J. S. Lake,* Judge;
reversed.

*O. A. Featherston,* for appellant.

Act 200, Acts 1915, is void because it has no enacting
clause. 27 Ark. 266; 101 Ark. 473; Const. Art. 5, Sec. 18.

Act. 409, Acts 1907 is a quarantine measure only
and does not contemplate cattle dipping, nor provide a
penalty for failure to do so. 90 Ark. 343; 190 S. W. 436.

The penal section of Act 409 was not followed in the
indictment. Nothing less than a charge in the language
of the statute can answer. 53 Ark. 334, 336.

The act provides for an examination of suspected
animals, and furnishing the owner a copy of the findings,
together with a copy of the rules and regulations of the
Board of Control, and the State on appellant's motion
should have been required to show that this had been
done.

Appellant's demurrer should have been sustained.

It was error to give a peremptory instruction of
guilty, under the facts.

*Jno. D. Arbuckle,* Attorney General, and *T. W.
Campbell,* Assistant, for appellee.

Act 86, Acts 1915, vests authority in the Board of
Control of Agricultural Experiment Station to promul-
gate necessary rules and regulations and to provide pen-
alties for infractions thereof in regard to cattle tick
eradication.

Act 407, Acts 1907, vests authority in the Governor
to change the boundaries of the quarantine line so as
to include other counties. Pursuant to this authority
the Governor issued his proclamation on September 8,
1918, extending the quarantine line so as to include Pike
County.

The Legislature has authority to delegate this power to the Governor. 61 A. L. R. 429.

This court will take judicial knowledge of the issuance of such proclamation and its contents, and also of the orders of the Board of Control. 130 Ark. 453; 90 Ark. 343.

WOOD, J. The appellant was indicted and convicted in the Pike Circuit Court of the crime of failing to dip his cattle and judgment was rendered against him in the sum of $1.00, from which is this appeal.

The indictment, omitting formal parts, charged as follows: "The said Tim Palmer in the county and State aforesaid on the 9th day of September, 1918, being then and there the owner of, and having in charge cattle, did unlawfully fail and refuse to dip said cattle." The appellant demurred to the indictment on the ground that the facts stated do not charge a public offense. The appellant contends that Act 200 of the Acts of 1915, p. 804, providing a method of putting in operation the tick eradication law in Pike County, was void because it has no enacting clause. Appellant is correct in this contention. The act contains no enacting clause and, under the decisions of this court, such defect renders it a nullity. Art. 5, Sec. 18, and Art. 29 (Amendment No. 10), Constitution 1874; *Vinsant, Admx.,* v. *Knox,* 27 Ark. 266-282, *et seq.* 286.

But appellee contends that the indictment charges a public offense under other statutes.

A district cattle quarantine line was first established in this State in 1899. Acts of 1899, p. 71. The above act was amended and the quarantine line changed by the Acts of 1901, p. 106. In the suppression and extirpation of contagious diseases among domestic animals, it is the declared policy of the federal authorities to act in conjunction with the State authorities. Compiled Statutes of the United States, p. 3184; *Kansas City Southern Ry. Co.* v. *State,* 90 Ark. 343-346. It is a matter of common knowledge of which the court will take

judicial notice that in conformity with the above policy, the Federal and State cattle quarantine lines in this State are identical. The Legislature, in an act approved May 28, 1907, (Sec. 10, Act 409 of the Acts of 1907) provided, among other things, "that if, at any time it shall be found after investigation by the veterinary department of the Agricultural Experiment Station, that the district cattle quarantine line, established by Sec. 1 of Act 59 of the Statutes of Arkansas and approved March 22, 1901, should be changed so as to further include or exclude one or more counties or parts of counties, and on the recommendation approved by the Board of Control of the Agricultural Experiment Station, it shall be submitted to the Governor and he shall, by proclamation, make such change, and the cattle quarantine line thus established shall, from that date, replace the district cattle quarantine line of the aforesaid Sec. 1 of Act. 59."

The Governor, under the provisions in the above statute and upon recommendation of the veterinary department approved by the Board of Control of the Agricultural Experiment Station on the 7th day of September, 1918, issued his proclamation declaring that, among others the county of Pike was from that date placed above the district cattle quarantine line, and in a district designated as a special State cattle quarantine area found to be infested with Texas fever ticks. Sec. 6 of Act 86 of the Acts of 1915, p. 340, provides: "That the enforcement of the laws of this State in relation to cattle tick eradication and protecting the counties placed entirely or provisionally above the Federal quarantine line in this district is hereby vested in the Board of Control of the Agricultural Experiment Station, with full power and authority to promulgate the necessary rules and regulations for that purpose and to provide penalties for the infraction or disobedience of any such rule or regulation, or order made by such board, and to enforce obedience to such rules and regulations."

It thus appears that Pike County, under the authority of the above statute was, by proclamation of the Gov-

ernor, placed provisionally above the district cattle quarantine line and brought within a special quarantine area which was subject to the rules and regulations promulgated by the Board of Control of the Agricultural Experiment Station. The proclamation of the Governor, however, shows that Pike County was not brought within the quarantine area subject to the rules and regulations of the Board of Control of the Agricultural Experiment Station until September 7, 1918. Witnesses testified that the appellant had failed to dip his cattle several times on dipping days prior to September 7, 1918. The appellant objected to this testimony and the court overruled his objection and permitted the testimony to be considered by the jury. The appellant, also, prayed the court to instruct the jury that they should not take into consideration testimony as to his failure to dip his cattle prior to September 7, 1918, which prayer the court refused and to which ruling the appellant excepted.

These rulings of the court were erroneous and prejudicial to appellant. As Pike County was not brought within the quarantine area prior to September 7, the appellant was not subject to the rules and regulations of the Board of Control of the Agricultural Experiment Station until after that time, and the jury should not have been allowed to consider testimony tending to prove that he had failed to dip his cattle prior to that time.

A majority of the court are of the opinion that the indictment is sufficient to state a public offense. The indictment charges that the appellant Tim Palmer "in the county and State aforesaid, on the 9th of September, 1918, being then and there the owner of and having in charge cattle did unlawfully fail and refuse to dip said cattle against the peace and dignity of the State of Arkansas." The indictment fails to allege that the Board of Control of the Agricultural Experiment Station had made and promulgated rules requiring the dipping of cattle.

A majority of the court are of the opinion that under the decisions of this court in *Cazort* v. *State*, 130 Ark.

453, and *Kansas City Southern Ry. Co.* v. *State,* 90 Ark. 343, the court will take judicial notice of the making and promulgation of the rules by the Board of Control of the Agricultural Experiment Station, and that such being the law, it is unnecessary to allege and prove that such board made and promulgated regulations. Our statute provides "that no presumption of law nor matter of which judicial notice is taken need be stated in pleading." See *St. L., I. M. & S. Ry. Co.* v. *State,* 68 Ark. 561.

A majority of the court are also of the opinion that the allegations to the effect that the defendant did unlawfully fail and refuse to dip cattle, are sufficient to charge him with a public offense. See *Rider* v. *State,* 126 Ark. 501-2.

The writer and Mr. Justice Hart take issue with the majority of the court on the sufficiency of the indictment. The indictment does not allege that the Board of Control of the Agricultural Experiment Station had made and promulgated any rules and regulations regarding the dipping of cattle. It does not appear, therefore, from the indictment that the appellant had violated any law. Section 6 of Act 86 of the Acts of 1915, *supra,* p. 340, vests the Board of Control of the Agricultural Experiment Station with full power and authority to promulgate the necessary rules and regulations for the purpose of tick eradication, and obedience to these rules is necessarily enjoined upon all persons coming within their scope, but the act does not confer upon the Board of Control any legislative power. The Board had no power to prescribe penalties for the violation of its rules, for that would be a legislative function. See *Davis* v. *State,* 126 Ark. 260-264.

In order to charge a public offense by indictment, under the above statute, it must be alleged and proved that rules and regulations for tick eradication were duly made and published or promulgated. This allegation was essential to the indictment for the reason that the rules and regulations of the Board are not legislative acts or statutes and the indictment must give notice to the ac-

cused, of the offense which he is alleged to have committed, in order that he may prepare for his defense.

The accused is not notified that he has committed any public offense unless it is alleged that the Board of Control of the Agricultural Experiment Station made and promulgated regulations for tick eradication which he had failed to comply with. The allegations in the indictment that the accused "did unlawfully fail and refuse to dip said catte against the peace and dignity of the State of Arkansas," did not give notice that he had committed any public offense.

The case of *Rider* v. *State,* 126 Ark. 501-2, does not rule this for the reason that the prosecution there was by information. The same particularity is not required in an information filed by the prosecuting attorney under Section 6400 of Kirby's Digest, as is required in an indictment. An information like an affidavit before the justice of the peace has served its purpose when a warrant has been issued upon it and the accused has been arrested and brought before the court for trial. The information may be amended and the charge formulated after the accused is in the court. But, an indictment can not be so amended. It must be direct and certain as regards the offense charged, and the offense must be charged with such degree of certainty as to enable the court to pronounce judgment on conviction. Sec. 2227-28 Kirby's Digest, and cases cited in note; 3 Crawford's Dig. "Indictment," Sec. 20.

Usually in statutory misdemeanors it is sufficient to follow substantially the language of the statute. But nothing can be taken by intendment in an indictment to supply the acts and facts necessary to constitute the crime sought to be charged. *State* v. *Lester,* 94 Ark. 242; *Quertermous* v. *State,* 95 Ark. 48.

Now there is no statute prescribing the crime charged, and in the absence of an allegation that the Board of Control of the Agricultural Experiment Station had made and promulgated rules, the accused is not notified of any public offense.

Where it is alleged and proved that the Board did make and publish regulations, then, the court will take judicial knowledge of the contents of such regulations and of the penalty for their violation. *Cazort* v. *State,* 130 Ark. 453; *Kansas City So. Ry. Co.* v. *State,* 90 Ark. 343.

Although Pike County was in the quarantine area and subject to whatever rules and regulations the Board of Control promulgated requiring the dipping of cattle, yet, it was incumbent upon the State to allege and prove that the Board had promulgated such rules and that the appellant had violated the same before he could be convicted of a public offense. There is no such allegation and no such proof.

A majority of the court, however, are of the opinion that the ruling of the court is correct in overruling the demurrer to the indictment, but should have granted appellant's motion for a new trial for want of evidence to sustain the verdict.

The judgment, for the error indicated, is, therefore, reversed and the cause remanded for new trial.