HUMPHREY *v.* TINSLEY.

Opinion delivered February 24, 1930.

*Feazel & Steel,* for appellant.

HART, C. J., (after stating the facts). The Legislature of 1915 passed an act for the purpose of bringing about cattle tick eradication, and establishing a Board of Control for enforcing the law relating thereto with full power to promulgate the necessary rules looking to that end. The act was sustained as a valid exercise of the police powers of the State for the protection of the health of cattle, and that this class of legislation emanates from the same source as that dealing with the public health. The court said that, while the Legislature could not delegate its power to make laws, it might delegate to a board or other governmental agency the power to make and enforce rules and regulations for the execution of a statute according to its terms; and that, when these boards adopt rules or regulations by virtue of legislative authority, they may be said to be in force by authority of the statute. *Davis* v. *State,* 126 Ark. 260, 190 S. W. 436; *Cazort* v. *State,* 130 Ark. 453, 198 S. W. 103; *Palmer* v. *State,* 137 Ark. 160, 208 S. W. 436; and *Boyer* v. *State,* 141 Ark. 84, 216 S. W. 17.

In the application of the principle in *State* v. *McCarty,* 5 Ala. App. 212, 59 So. 543, the Court of Appeals of Alabama held that the State, under its police powers, may prescribe stock quarantine regulations, and punishment for their violation, and may require its citizens, at their own expense, to disinfect their stock.

In *United States* v. *Grimaud,* 220 U. S. 506, 31 S. Ct. 480, it was held that Congress could not delegate legislative power, but that the authority to make administrative rules was not a delegation of legislative power, and that

such rules do not become legislation, because violations thereof are punished as public offenses. In that case the court recognized that it is sometimes difficult to define the line which separates legislative power to make laws from administrative authority to make regulations. It is a matter of scientific knowledge, that wherever the cattle tick is found, there Texas fever exists; and, as has been judicially declared, Texas fever and cattle ticks go hand in hand. Because Texas fever is communicable and is a dangerous cattle disease, which may be carried on cattle from one locality to another, quarantine regulations, including the spraying or dipping of cattle, have generally been held valid under the police powers of the State. In order to effectuate the purpose for which they are intended, some leeway must be given administrative officers in the execution of the laws. While the law must be complete in all its parts and govern every step taken in its execution, much discretion must be left to the administrative officers in putting it in operation, and in executing it. To this no valid objection can be made. Of course, the administrative officers may be dealt with for any arbitrary, discriminating or willful disregard of their official duties. We are of the opinion that the Board of Control may mould and fashion its rules to suit changing conditions.

As said in Sutherland, Statutory Construction, vol. 1, § 68, 2d ed., p. 148: "The true distinction is between the delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution to be exercised under and in pursuance of the law."

The issue raised by the appeal in the case at bar involves the construction of paragraph 2, § 4 of the rules promulgated by the Board of Control, which reads as follows:

"Paragraph 2. In counties or portions of counties where systematic tick eradication is being conducted under the regulation of this board, it shall be the duty

of all persons owning or having charge of any cattle to dip, or otherwise disinfect by means that may be designated, all their cattle every fourteen days under the supervision of a duly authorized inspector of this board, unless they receive written notice that they are not required to dip their cattle.''

The Legislature of 1919 made it the duty of any peace officer, when notified by a duly authorized inspector, to dip cattle at a time and place designated by said inspector, when the owner fails, refuses, or neglects to dip his cattle under supervision on regular dipping dates. A fee for the payment of the officer is provided for in the same section, and, upon the owner failing to pay the same, the peace officer may sell the cattle, and take his statutory fee and the expenses of the sale out of the proceeds of the sale. General Acts of 1919, p. 216.

The evidence adduced in favor of appellants tends to show that appellee refused to dip his cow under the supervision of the inspector as required by the rules of the board. The appellee admits this, and also testified that he carried his cow home without doing so. He seeks, however, to maintain his action of replevin for the cow by showing that he sprayed his cow in the presence of the inspector just as other cows were being sprayed, which he testified were in similar condition to his cow. This was not a compliance with the rules. It would take away from the inspector his discretion or supervision in the matter and place it in the owner of the cattle. Such a course would soon result in a practical nullification of the rules, and tick eradication could not be accomplished except by the unanimous voluntary action of the owners of cattle within the district.

In this view of the matter, the law had just as well never have been passed. If compulsory dipping or spraying is to be enforced, it must be done under the supervision of an officer appointed for that purpose, and not left to the judgment of each cattle owner. No uniformity in enforcing the rules of the board can be accomplished ex-

cept under the supervision of an officer whose duty it is to act, and he must be left to act on his own judgment in the matter, always subject to removal or punishment for an arbitrary discharge of his duties or willful disregard of them.

Here the undisputed evidence shows that the appellee refused to allow the inspector to dip the cow, but claimed the right to spray her himself, and then carried her home. This fact was reported by the inspector in charge of the dipping vats to appellants, who were the proper officers to enforce the rules of the board. Appellants then took the cow, dipped her, and held her for payment of the fees and expenses allowed them by statute for so doing. It is true that appellee testified that his cow was sprayed with the same material used by the inspector, but he admits that the inspector told him that this cow would have to be dipped and that he refused to allow this to be done and took his cow home after spraying her according to his own notion. Thus, according to his own evidence, the supervision or discretion of the inspector was taken away, and that of the owner of the cattle was substituted. This act was in violation of the rules; and when the inspector notified appellant of the refusal of appellee to allow his cow to be dipped under his supervision, it became their duty, as officers charged with the enforcement of the rules of the board, to take charge of appellee's cow for the purpose of dipping her, and they had the legal right to keep the cow until appellee paid them the statutory fee; and in default of payment thereof, appellant might sell the cow for the dipping fee and expenses of sale as provided by statute.

Therefore, the court erred in not directing a verdict for appellants; and for that error the judgment must be reversed, and the cause will be remanded for a new trial.