PARKER *v.* NICHOLAS.

Opinion delivered March 23, 1931.

*McConnell & Jackson,* for appellant.

SMITH, J. Appellee is engaged in cattle tick eradication work in Howard County, pursuant to the regulations of the Board of Control of the Arkansas Agricultural Experiment Station, having charge thereof. The validity of the regulations of this board has been recognized in numerous cases. Appellee sprayed three head of cattle belonging to appellant, two one day and the third the following day, and he demanded the fees for the service amounting to $9, $3 for each animal sprayed. When payment was refused, appellee drove away the last animal sprayed, for the purpose of selling it in satisfaction of his fees, but, before it could be sold, appellant brought suit in replevin to recover its possession, and from a judgment adverse to him in the circuit court is this appeal.

Two questions are presented for our decision, one of fact, the other of law. The question of fact was submitted under an instruction as favorable to appellant as could have been given, which reads as follows: "You are instructed that, if you find from a preponderance of the evidence, plaintiff was instructed by those in charge of tick eradication that if his cattle had been kept in a pasture and not allowed to run upon the range, and you find that such cattle had been so kept in a pasture, or if you find that those in charge of tick eradication had instructed plaintiff to dip or spray such of his cattle which were permitted to run at large on the range, and you find such of his cattle which ran at large upon the range were dipped or sprayed, as required by the authorities, and then placed in his pasture and kept there free from tick contamination, you will find for the plaintiff."

The testimony on the part of appellant was to the effect that he had kept in his pasture the animal which

was sprayed on the third day, and that he had been advised by the officers engaged in the enforcement of the tick eradication regulations that he would not be required to dip or have sprayed the cattle which had not been allowed to run on the range. But the testimony is conflicting on this issue of fact, and is sufficient to support the finding, not only that appellant was not so advised, but that, even so, the animal in question had not been continuously confined in the pasture but had been allowed to range outside.

The law question in the case is whether the authority exists to make a charge for spraying an animal, the insistence being that provision is made only for a charge for dipping; in other words, that a charge may be made for dipping cattle, but not for spraying them, and, as the plaintiff's cattle were sprayed, and not dipped, there is no authority to charge for the service rendered.

We do not so understand the law and the regulations of the Board of Control. Both dipping and spraying are intended to accomplish the same purpose, and both methods have been approved by the Board of Control.

Section 40 of bulletin No. 160, promulgated by the Board of Control, is a copy of § 1 of act 279 of the Acts of 1919 (General Laws 1919, p. 216), and reads as follows: "It shall be the duty of any peace officer, when notified by a duly authorized inspector, to dip cattle at a time and place designated by said inspector, when the owner or person having cattle in charge shall fail, refuse, or neglect to dip said cattle under supervision on regular dipping dates. The peace officer shall have free access to any premises, and is authorized to make a charge of not less than one ($1) dollar or not more than three ($3) dollars for each animal for their services, and the owner or person in charge of said cattle shall pay this fee, and, upon his failure to pay the same, the peace officer shall sell the cattle and take his fee and the expenses of the sale from the proceeds of the sale. Stray cattle shall

be dipped by any peace officer, and, if not claimed and the officer's fee paid, the cattle must be impounded and advertised for ten days, after which they may be sold, and after the fees have been taken from the proceeds of the sale the remaining, if any, shall be paid into the county general revenue fund.''

Paragraph 2 of § 4 of Bulletin No. 160, above referred to, reads as follows: ''In counties or portion of counties where systematic tick eradication is being conducted under the regulation of this board, it shall be the duty of all persons owning or having charge of any cattle to dip or otherwise disinfect by means that may be designated all their cattle every fourteen days under the supervision of a duly authorized inspector of this board unless they receive written notice that they are not required to dip their cattle.''

We have expressly held that the board has authority to make such regulations as the one last quoted, and that the board has authority to enforce these and similar regulations, and that it is the duty of all persons coming within their purview to obey them. *Kansas City So. Ry. Co.* v. *State,* 90 Ark. 343, 119 S. W. 288; *St. L. I. M. & S. Ry. Co.* v. *Campbell,* 116 Ark. 119, 172 S. W. 823; *Davis* v. *State,* 126 Ark. 260, 190 S. W. 436; *Rider* v. *State,* 126 Ark. 501, 191 S. W. 12; *Cazort* v. *State,* 130 Ark. 453, 198 S. W. 103; *Palmer* v. *State,* 137 Ark. 160, 208 S. W. 436; *Ashcraft* v. *State,* 140 Ark. 505, 215 S. W. 688; *Boyer* v. *State,* 141 Ark. 84, 216 S. W. 17; *Teague* v. *State,* 141 Ark. 182, 216 S. W. 294; *Lee* v. *State,* 141 Ark. 490, 217 S. W. 455; *Housley* v. *State,* 166 Ark. 453, 266 S. W. 957; *Humphrey* v. *Tinsley,* 181 Ark. 73, 25 S. W. (2d) 1.

The regulations of the Board of Control treat dipping and spraying as having the identical purpose of applying to the tick-infested animal the solution approved by the Board of Control as an effective means of ridding the animal of the ticks which infest it. The service is identical, although the manner of rendering it is different, and both the statute and the regulations of

the board fix the fees for the service. The testimony shows that the board had fixed the fee for either service at $3, and the authority existed therefore for collecting this charge when the service had been performed.

It was therefore the duty of the plaintiff to pay this charge, and the peace officer who rendered the service had authority to retain the animal, subject to his right to sell in the manner authorized by the act of 1919, *supra.* Having refused to pay this charge, the plaintiff did not have the right to the present possession of the animal at the time he instituted this suit, and the judgment of the court to that effect must be affirmed, and it is so ordered.