ANDREW WEBB *v.* O. E. BISHOP, SUPT.
OF ARKANSAS PENITENTIARY

5230                                    413 S. W. 2d 862

Opinion delivered April 10, 1967
[Rehearing denied May 15, 1967.]

*John W. Walker,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst.
Atty. General, for appellee.

LYLE BROWN, Justice. This appeal comes from a hearing on appellant's petition for a writ of *habeas corpus*. Appellant was on parole from a three year sentence to the Arkansas Penitentiary and his parole was revoked. He attacked the revocation procedure as being violative of his rights under the due process and equal protection provisions of the Constitution of the United States. Webb's petition for discharge and return to parole status was denied and he appeals.

Appellant Webb and his wife resided in or near Gould, Arkansas, and he was regularly employed by his parole sponsor. Shortly after midnight on Sunday morning, July 17, 1966, the couple and companions were arrested by the chief of police of Gould. Webb was charged with driving while intoxicated, resisting arrest, and altering a driver's license. It is undisputed that he was thoroughly intoxicated. He was held in jail from the time of his arrest until the next Monday morning. The arresting officer called Webb's parole supervisor, reported the incident, and recommended that Webb's parole be revoked. The supervisor requested that Webb be held until the next day, Monday, July 18th, at which time the supervisor would come to Gould.

When the supervisor arrived Monday morning, Webb was taken from the jail to the justice of the peace between nine and ten o'clock a.m. Charges were read to Webb and he was asked to plead to the charge of DWI. Webb wanted to argue before he answered, but the record is silent as to the subject of his argument. The justice of the peace apparently indicated that he wanted no argument and requested Webb to plead. Webb responded by pleading guilty to DWI. Thereupon, the parole supervisor took Webb into custody and returned him to the penitentiary.

It is appellant Webb's contention that the treatment he was afforded from the time of his arrest to and including the time of arraignment, was violative of his

constitutional rights. These allegations are based on four assertions: (1) That on Sunday, Webb's wife informed the chief of police that she wanted to make bond and was advised there would be no bond; (2) that Webb was deprived of a public trial; (3) that he was not represented by counsel or advised that he had a right to counsel; and (4) that he was "whisked away" to the penitentiary immediately after the arraignment and thereby deprived of the opportunity to appeal.

Although it is recognized that the arraignment on a charge of DWI, and the parole revocation, are separate and distinct, appellant earnestly contends that his revocation was caused by an illegally exacted plea of guilty on the DWI charge. Strength for this argument is founded on the testimony of the parole supervisor. He testified that he had authority to revoke paroles. He further stated that Webb's revocation was based solely on the plea of guilty to DWI.

The illusionary grandeur of this officer is quickly dispelled, both in law and in fact. Parole supervisors are creatures of the statutes and their duties are there enumerated. These duties are contained in three different sections of Ark. Stat. Ann., Title 43, Ch. 28 (Repl. 1964), and may be summarized as follows: 1. Arrest and place in jail without warrant any person found to be violating the terms of his parole. 2. Immediately report parole violations to the director of paroles. 3. Make daily reports to the director of paroles. 4. Make such reports as are required concerning persons in their respective districts who are on parole.

These are all the statutory duties assigned the supervisor. If we add the power to revoke parole (simply on the supervisor's assertion that he has such authority), it would be violative of the express direction of the statute which vests such authority in the State Penitentiary Board. Ark. Stat. Ann. § 43-2802 (Repl. 1964).

With respect to parole revocation, the Board pro-

mulgated its rules in 1955. We take judicial notice thereof. *Seubold* v. *Fort Smith Special School Dist.*, 218 Ark. 560, 237 S. W. 2d 884 (1951); *Palmer* v. *State*, 137 Ark. 160, 208 S. W. 436 (1919). There we find the Board has delegated to only one official the authority to revoke a parole, namely, the director of paroles. Any parolee feeling aggrieved by revocation promulgated by the director is entitled to be heard by the Board at its ensuing meeting at the penal institution.

So much for the legal authority for parole revocation. When we examine *all* of the testimony of the supervisor—having in mind these statutory provisions—it is readily discernable that he did not in fact revoke appellant Webb's parole. Laying aside his assertion of authority to revoke, we examine his actual procedure which is explained in his own words:

> "I made a revocation of parole July the 17th [actually meaning the 18th], mailed it to the home office in Little Rock that date. They mailed a parole revocation warrant from Little Rock to the State Penitentiary verifying that *I had asked for the parole revocation.*" [Our italics.]

When the supervisor's statement is examined in light of his statutory duties, it is not difficult to ascertain the correct events. He attended the JP court; he heard Webb plead guilty to DWI; such conduct—even drinking intoxicants—is in violation of the written parole agreement; the supervisor mailed "to the home office in Little Rock" a report of the parole violation, this being the report that is required by statute; he took Webb into custody, as he is authorized to do by statute; he delivered him to the penitentiary, a short distance from Gould, there to be held until the revocation recommendation was approved or disapproved; the director of probations, headquartered in Little Rock, who is the Board's executive secretary, mailed the order of revocation to the state penitentiary.

The phrases, "I made a revocation of parole," and "I . . . asked for the parole revocation," are inconsistent. So, when we turn to the statutes, we find the latter statement to be the one that is correct.

Let us assume, without deciding, that some constitutional right of appellant was violated, as alleged, with respect to the arrest, detention, and hearing on the DWI charge. We are still unable to see how such a violation, particularly in a misdemeanor proceeding, could work to inhibit the right of the State to retrieve the admitted parole violator. As to the DWI charge, he had the right of appeal, and Webb and his attorney were reminded by the circuit judge at the *habeas corpus* hearing that the time for such an appeal had still not expired. As to the parole violation, Webb, at both hearings, admitted his guilt. At the hearing in circuit court, he stated that he went to the twelfth grade in school, he showed a good knowledge of the contents of the parole contract, and he readily admitted that he was drunk and driving. At no time did he offer any proof of physical mistreatment, nor did he express ignorance of the nature of the act of driving while intoxicated.

In the matter of parole revocation, a parolee is not in the same category (as respects constitutional rights) as is a free and unconvicted citizen who is faced with a criminal charge. As was stated in the landmark case of *Burns* v. *United States,* 287 U. S. 216, 53 S. Ct. 154 (1932):

> "Probation is thus conferred as a privilege and cannot be demanded as a right. It is a matter of favor, not of contract. There is no requirement that it must be granted on a specified showing. The defendant stands convicted; he faces punishment and cannot insist on terms or strike a bargain. . . .

> "The question, then, in the case of revocation of probation, is not one of formal procedure either with

respect to notice or specification of charges. or a trial upon charges.''

Then, in *People of the United States ex rel. Harris v. Ragen,* 81 F. Supp. 608 (1949):

"It should be understood at the outset that a parolee possesses no inherent constitutional right which would entitle him to a hearing before his parole could be revoked. If he seeks to assert such a right, he must look to the Statutes rather than the Federal Constitution.''

In *Harris* v. *Ragen* it is pointed out that the administration of the parole law is vested in the executive, not the judicial, branch of the government, and it is further held that the claim of the parolee to a right to legal representation at a revocation hearing was without merit.

We hold that when our State Penitentiary Board revokes a parole, that revocation can be set aside in the courts if it be shown that the Board acted arbitrarily or capriciously. Such an attack must be by direct proceeding and not collateral, as was attempted by appellant Webb.

Affirmed.