**Rudy Thomas HICKMAN et al.,
Plaintiffs,**

v.

**ARKANSAS BOARD OF PARDONS
AND PAROLES et al., Defendants.**

**No. LR–73–C–68.**

United States District Court,
E. D. Arkansas, W. D.

June 13, 1973.

Jim Guy Tucker, Ark. Atty. Gen., Ralph C. Hamner, Jr., Asst. Atty. Gen., Little Rock, Ark., for defendants.

## MEMORANDUM AND ORDER

EISELE, District Judge.

This case is now pending before the Court on a Motion for Preliminary Injunction. The suit is brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201 and 28 U.S.C. § 2241 as an individual and class action. The named plaintiffs and members of the class they wish to represent are parolees who have had their paroles revoked since June 29, 1972, the date of the United States Supreme Court's decision in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). A hearing on the motion was held on May 10 and 11, 1973, and subsequently the parties filed written briefs.

The Court finds that this action may be maintained as a class action pursuant to F.R.Civ.P. 23(b)(2) for prospective injunctive and declaratory relief; under 42 U.S.C. § 1983. The members of the class are all present and future parolees and persons held by the Arkansas Department of Correction who have had their paroles revoked since *Morrissey* or who may in the future have their paroles revoked.

Ignoring the exhaustion question discussed later in this opinion, this action still should not proceed as a class action for habeas corpus relief purposes. Although there is a community of interest among those persons the named plaintiffs wish to represent, the factual circumstances vary so greatly with respect to each individual case that the denial or grant of habeas relief on a class basis becomes impossible.

It is clear from *Morrissey* that a parolee is entitled to a preliminary and a final revocation hearing. Before the preliminary hearing the parolee is entitled to notice of the alleged violations and of the purpose of the hearing. At the hearing the parolee

Bart Mullis, Pine Bluff, Ark., Robert A. Newcomb, Ark. Dept. of Correction, Little Rock, Ark., for plaintiffs.

should be given the chance to speak on his own behalf and to introduce relevant evidence. He is entitled also to a conditional right to question adverse witnesses, an independent decisionmaker, and a written statement covering the evidence and reasons for the action taken.

Minimum requirements of due process require that the final hearing include:

"(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."

Morrissey v. Brewer, *supra*, 408 U.S. at 489, 92 S.Ct. at 2604.

## SECTION 1983 CLAIM

■ Since the *Morrissey* decision defendants have been struggling to conform their parole revocation practices to the above requirements. Despite those good faith efforts, it is clear from the evidence that they had not, prior to the hearing, adopted or followed policies, practices and procedures adequate to meet constitutional requirements.[1] It is quite clear from the evidence that many of the inmates at Tucker and Cummins whose paroles have been revoked since June 19, 1972, are being illegally denied

the continuance of their parole status. The Court finds that the plaintiffs will be irreparably injured if preliminary injunctive relief is not granted. Further, plaintiffs have shown a reasonable probability of eventual success. The Court will therefore require defendants to review the files in each and every parole revocation since June 29, 1972, to determine if obvious procedural defects were cured by the prisoner's admission of guilt before the board after being fully advised of the charges against him. If not, the Court will permit an interim emergency procedure pursuant to which the alleged parole violator is promptly brought before an impartial hearing officer, after having received proper written notice of the charges against him, in order to determine whether he admits or denies the charges. If the charges are admitted and there are no extraordinary circumstances that might justify or mitigate the violation, that would, under such emergency procedures, cure prior procedural defects. If the charges are denied, or if the parolee wishes to explain the circumstances of the violations, a full adjudicatory hearing will be scheduled within 45 days, such hearing to be conducted in accordance with the requirements of *Morrissey*.[2]

Defendants in the May hearing before this Court introduced into evidence proposed rules and regulations which they contend comply with the mandates of *Morrissey*. Plaintiffs have lodged specific objections to certain of those rules and regulations. The Court assumes, at least for the purposes of this memorandum and order, that plaintiffs are in agreement that those proposed rules and regulations to which they have not objected comply with constitutional

---

1. For instance, parolees were not given sufficient written notice of alleged violations of parole; in many cases preliminary hearings were not held and the "Waiver of Preliminary Hearing" form included an admission by the parolee that he violated the terms of his parole; and the parole board did not provide parolees with a written statement giving the evidence relied on and reasons for revoking parole.

2. Of course, defendants in using interim emergency procedures must follow the standards for appointment of counsel propounded by the United States Supreme Court in Gagnon v. Scarpelli, discussed *infra*.

requirements.[3] Plaintiffs may, of course, lodge further objections pending the hearing on the merits of this case.

■ Plaintiffs contend that neither the proposed "arrest warrant" nor the "Notice to Appear" give the parolee adequate information concerning the facts underlying his alleged parole violation. The Court finds, however, that the forms are adequate. Whether or not a parolee receives adequate information depends upon the detail with which the forms are filled out by the responsible official. The Court cannot prejudge the actions of the defendants and those employed by them, but the Court desires to make it clear that the written information previously provided the parolee has not been adequate to properly inform him of the charges against him.

Plaintiffs object to the notice of preliminary hearing form in that it does not advise the parolee of his right to cross-examine witnesses. Mr. Ralph C. Hamner, Jr., attorney for defendants, notified the Court by letter that he had "informed Mr. Jack Grasinger that the following paragraph should be added" to the notice of preliminary hearing form:

> "Upon your request you will be afforded the opportunity to confront or cross-examine any adverse witness unless the hearing officer determines that the witness may be subjected to risk, harm, harassment, or embarrassment by the confrontation."

The Supreme Court in *Morrissey* listed only one exception to the right to confrontation at the preliminary hearing. That exception is a situation in which the informant would be subjected to "risk of harm" if his identity were disclosed. This Court will not at this time approve the other exceptions listed by Mr. Hamner above, for the factual circumstances of each case will dictate whether a "good cause" finding is proper. The Court does, however, have serious reservations regarding the wording of certain of the exceptions.

■ Plaintiffs contend that at least 48 hours' written notice should be given an alleged parole violator before a preliminary hearing is held. The Court will not impose specific time limits for notice. Defendants' rules and regulations provide that notice will be given within a "reasonable time" prior to the preliminary hearing. If the defendants develop a policy of giving less than 48 hours' notice, then the plaintiffs may, if they wish, attack the policy as not complying with the "reasonable time" requirements of the rules or the due process requirements of the Constitution.

■ It is clear that a written statement by the factfinders as to the evidence relied on and reasons for revoking parole must be made and a copy thereof provided the parolee. The form submitted by defendants for that purpose is adequate. Again, it is the manner in which that form is used which will be crucial.

■ Plaintiffs have raised the issue, and the Court must emphasize, that the suggested rules, regulations and forms filed here are of little value if parolees are not made fully award of their content and meaning. Many of the inmates of the Arkansas Department of Correction are illiterate and the burden rests with defendants to insure that the parolee facing revocation be made acutely aware of what will occur at each and every stage of the revocation process and of his rights in relation thereto.

■ Plaintiffs urge that since an Arkansas parolee can be represented by retained counsel at his revocation hearing, appointed counsel for indigents should be required under the equal protection clause. The Supreme Court in *Morrissey* did not reach the question of whether a parolee is entitled to retained or appointed counsel. In Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), however, the Supreme Court enunciated standards (al-

3. The right to counsel at the preliminary and revocation hearings will be discussed, infra.

beit somewhat elusive) determinative of when representation by appointed counsel is constitutionally compelled.

"The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision. Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record."

Defendants should change their rules, regulations and forms to accommodate the parolee's right to request counsel.

■ Although it is clear that a parolee has a right to be represented at a revocation hearing by retained counsel in a situation where appointed counsel must be provided, plaintiffs' equal protection argument remains. That argument was presented, without considering the *Gagnon* decision. By reserving decision on that issue until after a full hearing on the merits, plaintiffs will have an opportunity to refine their equal protection argument and defendants will have a chance to reevaluate their policies in the light of *Gagnon*.

## INDIVIDUAL HABEAS CORPUS CLAIMS

■ At the May 10 and 11 hearing on plaintiffs' motion for preliminary injunction, the Court allowed the individual petitioners to develop the factual evidence on which their habeas corpus claims are based. Habeas corpus relief will be denied, however, for failure to exhaust state remedies. Petitioners argue that:

" . . . Section 2254(b) of the Federal Habeas Corpus statute permits an exception . . . where there are 'circumstances rendering such State process ineffective to protect the rights of prisoners'. Petitioners submit that the Arkansas Supreme Court in Webb v. Bishop, 242 Ark. 320, 413 S.W.2d 862 (1967), denied habeas corpus proceedings to the Petitioners and all those similarly situated. The Supreme Court specifically held that revocation of parole must be attacked by direct process and not collaterally by habeas corpus. We submit that there are no such direct proceedings available to the Petitioners and, therefore, there are no meaningful State remedies available."

This Court cannot conclude, at this point, that there is no available state corrective process or that present circumstances render such process ineffective to protect petitioners' rights. The Arkansas Supreme Court, in *Webb*, indicated that a direct process exists by which the Parole Board's revocation of parole can be challenged. Defendants contend that the Arkansas Administrative Procedure Act, Ark.Stat.Ann. 5–701 et seq. (1967), as amended (Supp.1971), provides that direct process.[4] The Ar-

---

4. The Arkansas Administrative Procedure Act did not become effective until ninety days after March 31, 1967. The Act had been passed, however, before April 10, 1967, the date the Arkansas Supreme Court delivered its opinion in Webb

kansas Supreme Court has not had the occasion to comment further on this question.

Section 5–713(b)(2) of the Administrative Procedure Act requires that a petition be filed in the Circuit Court "within thirty days after service upon petitioner of the agency's final decision". Petitioners argue that this effectively precludes review of the circuit courts of their cases, in that the thirty-day period has passed. But the Arkansas courts have not had a chance to apply the Administrative Procedure Act in this context or to note what special circumstances, if any, might mandate a waiver of the thirty-day provision. Further, the Arkansas Supreme Court did not, in *Webb*, indicate it was relying upon that Act in deciding that a direct attack was required.

The Arkansas Supreme Court has opined that a remedy exists. Furthermore, the state courts, just as this Court, must and will come to grips with the constitutional requirements enunciated in *Morrissey*. Therefore, petitioners must attempt to obtain relief in the Arkansas courts. If no adequate remedy is available, then, of course, plaintiffs may return to this Court.

It is ordered that defendants conform their parole revocation procedures to the standards required by due process as outlined by the United States Supreme Court in Morrissey v. Brewer and as interpreted in the above memorandum opinion.

It is further ordered that defendants review the files in each parole revocation case since June 29, 1972, and in cases where procedural defects were not cured, the alleged parole violator be promptly brought before an impartial hearing officer after receiving proper written notice of the charges against him. If the charges are denied, or the

parolee wishes to explain the circumstances of the violations, a full adjudicatory hearing in accordance with the requirements of *Morrissey* shall be scheduled within 45 days after his appearance before the hearing officer.

It is ordered that petitioners' petitions for writs of habeas corpus be, and they are hereby, denied.

---

v. Bishop. Further, Section 5–709(b) of the Act gives the right to persons appearing before an agency to be accompanied by, and advised by, counsel. If the Arkansas courts apply the Adminis-

trative Procedure Act to the Board of Pardons and Paroles' handling of parole revocations, then this may also affect the plaintiffs' equal protection argument discussed above.