Betty McKINLEY, d/b/a My Kids Day Care *v.*
ARKANSAS DEPARTMENT OF HUMAN SERVICES,
Division of Family Services

92-738                                               844 S.W.2d 366

Supreme Court of Arkansas
Opinion delivered January 11, 1993

*Jackson & Pace*, by: *J. Robin Pace*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Frank Wills, III*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Justice. This appeal is from a decision of the Child Care Facility Review Board (a division of the Arkansas Department of Human Services, hereinafter "the Board") revoking My Kids Day Care's ("My Kids") license for one year. My Kids appealed to the circuit court which affirmed the Board's decision. Because this case involves the interpretation of an administrative agency's rules and regulations, our jurisdiction is pursuant to Ark. Sup. Ct. R. 29(1)(c). As we find no error, we affirm the actions of the Board and the circuit court.

## FACTS

Betty McKinley is owner and operator of My Kids Day Care in Rogers, Arkansas. The Board initially granted My Kids a provisional start-up child care license on July 16, 1986; the facility received a regular license in February 1987. For the first two years of operation, My Kids was monitored by child care specialists with the Department of Human Services. Although My Kids was found out of compliance in areas such as staff to children ratios and overcapacity, Mrs. McKinley corrected the infractions in a timely manner.

On February 7, 1989, the day care facility was extensively damaged by a fire, allegedly started by arson. After the fire, My Kids was granted a six month provisional license.

Mrs. Elaine Jenkins, Child Care Licensing Specialist for the Department of Human Services, made regular visits to monitor the day care after the fire and to check on the status of the repairs. In August of 1989, My Kids again received a provisional license. This license was to be valid through February 28, 1990.

In October 1989, Mrs. Jenkins reviewed the facility and noted several areas of noncompliance with regulations. These infractions were conveyed to Mrs. McKinley so that she could correct them prior to the next visit.

Mrs. Jenkins made multiple monitoring visits to My Kids during the first few months of 1990 to determine if Mrs. McKinley had cured the problems. During that time, My Kids

was cited ten times for not complying with the Board's rules and regulations. The most flagrant violations were in the areas of child capacity and staff/child ratios. Mrs. Jenkins told Mrs. McKinley that she needed documentation in order for the Board to complete its evaluation. Information needed included the policy on hiring and discharge of staff, procedures for reporting child abuse, health cards on staff, written record of all tornado drills, and health inspection records. Additionally, Mrs. Jenkins informed Mrs. McKinley that the facility needed to provide at least ten hours of training for all staff, smoke detectors, eliminate physical punishment for children under age three, and post the hot line number for reporting child abuse. As well, the swing set needed to be reanchored, boards, pipes, etc., needed to be removed, and baby beds needed to be replaced.

As a result of these allegations, the Board conducted an informal administrative hearing, took testimony of interested parties, and revoked My Kids' license. After this hearing, the Board made the following findings of fact:

1. Failure to maintain the required staff to child ratios and lack of supervision;

2. Use of physical punishment for children under three and the use of discipline which is not appropriate to the child's level of understanding;

3. Failure to comply with child care discipline standards;

4. Failure to maintain current child records;

5. Failure to provide well-balanced meals and nutritious snacks;

6. Failure to insure a safe outdoor play area;

7. Failure to provide adequate and approved sleeping arrangements for children;

8. Failure to provide towels for hand washing;

9. Failure to practice emergency drills with all children;

10. Failure to properly store hazardous items;

11. Failure to comply with the limit on the number of children the facility may serve. Capacity placed on the

center by the Child Care Facility Board as authorized by Ark. Code Ann. § 20-78-210 (1987).

My Kids appealed the Board's decision to the circuit court which remanded this matter to the Board for additional evidence concerning the Department of Human Services's investigation regarding the use of physical punishment and evidence concerning violations that had occurred prior to February 1990.

At both Board hearings, Mrs. Jenkins noted that the child/staff ratio and child capacity were repeatedly out of compliance. She testified that she never received the information she requested and the infractions were not corrected. The facility was licensed for six infants and eighteen preschoolers. On virtually all of her visits since the fire, Mrs. Jenkins had found the facility out of compliance because of overcapacity and insufficient staff. According to Mrs. Jenkins' testimony, the facility was also out of compliance in other areas. For example, there were never towels in the rest room. A child was found napping on the carpet with a playpen frame around him — there was no bottom in the play pen. Medicines were in an unlocked medicine cabinet in the bathroom. Ms. Ratha Turpin, child care licensing supervisor, had accompanied Ms. Jenkins on one of her visits to My Kids and confirmed Ms. Jenkins' testimony. Mr. J. R. Davenport, Child Care Licensing Specialist with the Department of Human Services, also confirmed Ms. Jenkins' testimony.

Testimony also indicated that My Kids had not followed other regulations regarding day care. For example, Thelva Bolen, a former employee of My Kids, testified that she had seen Mrs. McKinley punish the children, including the infants, with a fly swatter. Ms. Bolen also testified that the children did not get milk with their meals nor were they always served snacks. However, she did mention that she had on occasion seen the children served cookies and carrot sticks for snacks.

Another former employee, Ms. Lela Davis, echoed Ms. Bolen's testimony. Ms. Davis mentioned that there was not a program of activities for the children other than regular television watching.

Nevertheless, Ms. Aileen Leo, a part-time employee of My Kids and a parent of a My Kids' attendant, testified that her child

was well cared for by the center. Stipulations were made that other parents would testify that their children had not been spanked and were well cared for by My Kids.

After the second hearing before the Board, My Kids' license was again revoked for one year. On appeal, the circuit court affirmed the Board's administrative decision.

Although presented as twelve separate issues, the appellant's argument comes down to four concerns: did the Child Care Facility Review Board make its decision to revoke: (1) capriciously and arbitrarily; (2) without substantial evidence; (3) in reliance on an unconstitutionally vague administrative regulation; (4) without proper notice to My Kids in violation of due process? As we answer all these in the negative, the circuit court's decision to affirm the Board's decision is affirmed.

On appeal, My Kids asserts that we should reverse the Board's decision because it was made arbitrarily and capriciously as to the center's alleged failure to maintain required staff to child ratios, to properly store hazardous items, and to comply with the maximum limit on the number of children in the center.

■ An administrative decision should be reversed as arbitrary and capricious only when it is not supportable on any rational basis. *Partlow* v. *Arkansas State Police Comm'n*, 271 Ark. 351, 609 S.W.2d 23 (1980). An administrative decision is not to be deemed arbitrary or capricious simply because the reviewing court would have acted differently. *See Woodyard* v. *Arkansas Diversified Ins. Co.*, 268 Ark. 94, 594 S.W.2d 13 (1980). The appellant has the burden of proving that the proof before the administrative tribunal was so nearly undisputed that fairminded persons could not reach its conclusion. "The question is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made." *Williams* v. *Scott*, 278 Ark. 453, 647 S.W.2d 115 (1983).

■ My Kids contends that the decision to revoke because of improper child/staff ratios and overcapacity is arbitrary and capricious because Ms. Jenkins had previously found the center out of compliance and had nevertheless always renewed the license. However, these arguments have no merit because on prior occasions, Mrs. Jenkins had informed Mrs. McKinley of the

infractions, and they had been promptly corrected. My Kids' infractions after the fire in 1989 were never corrected, according to Mrs. Jenkins.

■ My Kids contends that the Board acted capriciously and arbitrarily in revoking due to the center's failure to properly store hazardous materials because Mrs. McKinley was allegedly told four years earlier that the center didn't have to follow the regulation that stated that medicine must be kept under lock and key. Obviously the Board did not find this testimony persuasive; this does not render the decision arbitrary.

■ My Kids also contends that the decision to revoke was not based on substantial evidence. Substantial evidence means such valid, legal and persuasive evidence that a reasonable trier of fact might accept as adequate to support the conclusion reached by the agency. The appellant bears the burden of demonstrating that the proof before the agency was so clearly undisputed that fairminded individuals could not have reached the agency's conclusion. *Partlow* v. *Ark. State Police Comm'n*, 271 Ark. 351, 609 S.W.2d 23 (1980). My Kids argues that there was not substantial evidence to support the Board's finding that: physical punishment was used on children under three years, child records were not maintained, nutritious meals and snacks were not served, a safe outdoor play area was not provided, adequate and approved sleeping arrangements were not provided, towels for hand washing weren't provided, and no emergency drills were performed.

■■ However, there was substantial evidence to support these findings. Former employees testified that nutritious meals and snacks were not consistently served and that the children slept on the floor or on mats that were not cleaned regularly. The child care specialists testified that they consistently found a lack of child records on emergency drills, no towels for hand washing, and a dangerous swingset in the play area. Although My Kids argues that these witnesses were not credible, credibility is for the Board to determine. We will not substitute our judgment for that of the Board's absent an abuse of discretion. *See Beverly Enterprises* v. *Ark. Health Services*, 308 Ark. 221, 824 S.W.2d 363 (1992).

Finally, My Kids argues that the Board's decision should be

reversed because it was based on an unconstitutionally vague regulation, and because the day care was denied due process of law because of insufficient notice of process.

Confusion on this issue arises, however, because My Kids complains of the vagueness of Minimum Licensing Requirement for Child Care Centers, Section 301, when in fact the argument contained in its brief concerns Section 102. My Kids quotes from Section 102 in its brief, yet neither Section 102 or 301 is abstracted. The state abstracted and defends Section 301 which does not appear to be in issue.

■ Normally, we will not consider arguments the bases of which are not abstracted. *Burgess* v. *Burgess*, 286 Ark. 497, 696 S.W.2d 312 (1985); Sup. Ct. R. 9(e)(2). However, this court can take judicial notice of regulations of state agencies which are published. *Register* v. *Oaklawn Jockey Club, Inc.*, 306 Ark. 318, 811 S.W.2d 315. *See also Webb* v. *Bishop*, 242 Ark. 320, 413 S.W.2d 862 (1967). The Minimum Licensing Requirements for Child Care Centers are available to the public in the Secretary of State's office. Although Section 102 was not abstracted by My Kids, we will, under the circumstances, take judicial notice of this regulation and consider its argument.

■ To avoid being vague under due process standards, a statute or regulation "must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *Thompson* v. *Ark. Social Services*, 282 Ark. 369, 669 S.W.2d 878 (1984). My Kids contends that the regulation is vague because the language of the regulation does not clearly define "substantial compliance." Section 102 states:

> The following requirements contain references to two types of standards, using the words "shall" and "should." The use of the word "shall" indicates that the terms of the statement are required for a facility to be in substantial compliance. The use of the word "should" indicates that the statement is recommended but not required for substantial compliance.
>
> In determining the recommendation for a licensing or church-operated exemption, the facility shall be reviewed by a Child Care Licensing Specialist to determine that the

facility is in substantial compliance with the requirements. Substantial Compliance means there is no omission of the *essential standards necessary to protect the health, safety, and welfare of the children and that all standards will be met within a reasonable timeframe agreed upon by the Child Care Licensing Specialist and the facility. Those essential standards which shall be met 100% are those which relate to: fire, health, safety, nutrition, staff/child ratio, and space.* Arkansas Stat. Ann. 83-921 states that licensing standards shall not include those of a religious or curriculum nature so long as the health, safety and welfare of the child is not endangered.

The Child Care Licensing Specialist shall review all areas of the requirements and consider noncompliance items based on the frequency, degree, severity, number and nature of noncompliance in making the licensing recommendation.

My Kids asserts that Section 102 is vague because it is not clear exactly which compliance requirements are to be governed by a 100% standard. Specifically, it claims that the substantial compliance section in Section 102 is indefinite as it relates to maintaining staff to child ratios at the day care center. Clearly, however, Section 102 of the Minimum Licensing Requirements for Day Care Facilities indicates that in the area of staff to child ratios, substantial compliance is deemed to be 100% compliance. This is not vague. It seems that the confusion in this regulation arises when the term "substantial compliance" is applied to an area that is not defined as 100%. However, My Kids has not raised that issue. Besides, appellant has standing only to challenge sections that directly affect it. *See Thompson* v. *Arkansas Social Services*, 282 Ark. 369, 669 S.W.2d 878 (1984).

Although My Kids complains of Section 301, it never indicates in its brief that this regulation is vague in any way, so we will not consider the constitutionality of this requirement.

My Kids also claims that it was not given adequate notice that one of its infractions included failure to comply with the Board's discipline standards. However, examination of the Department of Human Services notice and attachments indicates that use of physical punishment for children is one of the

indicated infractions. The notice is sufficient.

Affirmed.