The Honorable Jim Keet State Senator P.O. Box 23603 Little Rock, Arkansas 72221-3603
Dear Senator Keet:
This opinion is being issued in response to your request for an opinion regarding certain proposed legislation. On behalf of a constituent, Mr. Ralph Graves, you have requested that I review a piece of legislation drafted by Mr. Graves, for the purpose of determining whether it carries any inherent constitutional or other legal problems.
Mr. Graves' proposed legislation states:
 Any person who is, or has been, a paid employee of the people of Arkansas, be it at the National, State, County, Municipal, or Local level; either as an elected or appointed official, or, as an employee or officer within an office, department, committee, or institution which is either totally or partially funded by public monies; Upon conviction, plea-bargain or acceptance or immunity from prosecution, of any criminal felony, or any crime involving corruption, theft, fraud, or misappropriation of power or influence resulting from, related to, or derived as a result of, the office or position of which the person is currently holding or formerly held; said person shall immediately, and permanently, forfeit any and all direct benefits related to such public service or employment. Such benefits are to include, but not limited to: all publicly funded or derived retirement accounts, insurance positions or investments. The funds or benefits that are forfeited by the person in question shall immediately be transferred, in total, to the State of Arkansas' general fund.
It must be noted out the outset of this discussion that legislation is presumed to be constitutional and will be upheld if the courts can find any possible way to construe the legislation so that it meets the tests of constitutionality. Arnold v. Kemp, 306 Ark. 294, 813 S.W.2d 770
(1991). Moreover, the party challenging the legislation has the burden of establishing its constitutional infirmities. Holland v. Willis,293 Ark. 518, 739 S.W.2d 529 (1987).
Legislation that is designed to achieve Mr. Graves' goals can be successfully placed into effect and upheld. Indeed, similar legislation has survived legal challenges. For example, in Kerner v. State Emp.Retirement System, 21 Ill. Dec. 2d 879, 72 Ill. 2d 507, 382 N.E.2d 243
(1978), cert. denied 441 U.S. 923, the governor of the state of Illinois was divested of his retirement benefits because of his felony convictions, under the authority of a state statute that required such divestiture. On appeal, the Illinois Supreme Court affirmed the constitutionality of the divestiture under the terms of the particular statute. See also Mount v. Trustees of Public Emp. Retirement System ofNew Jersey, 133 N.J. Super. 72, 335 A.2d 559 (1975) (Suspension of indicted public official's benefits upheld on grounds that statute required "honorable" service as a condition to receiving benefits).
Because there is a myriad of possible legal challenges to legislation that operates to divest benefits, it will be essential to assure that Mr. Graves' legislation is drafted in such a way as to circumvent such challenges. With this goal in mind, I will discuss some of the pitfalls that could be particularly problematic.
Avoid Overbreadth
The language of the legislation should be as specific as possible.
The constitutional principle of due process, see U.S. Const., ams. 5 
14, prohibits legislation that is so broad that its sanctions could impinge upon constitutionally protectable conduct or rights without complying with the strictures of the due process principle. See, e.g.,Ports Petroleum Co. v. Tucker, 323 Ark. 680, ___ S.W.2d ___ (1996).
As currently drafted, the language of Mr. Graves' proposed legislation may be a bit broad in certain respects. More specifically, the legislation's wide application to "direct benefits related to . . . public service or employment" may encompass more benefits than actually intended. These "direct benefits related to public service or employment" could encompass those for which the public official in question voluntarily paid with his or her own contributions and in which the public official has a complete and vested interest, as well as benefits that were funded exclusively by taxpayers.
It is well-established that a constitutionally protectable property interest exists in vested rights to which the party in question holds a complete and enforceable claim. See generally 16C C.J.S. "Constitutional Law," § 966. Claims to fringe benefits in specific have been held, in certain instances, to constitute protectable constitutional property interests that are subject to the requirements of due process. Seegenerally 16D C.J.S. "Constitutional Law," § 1246.
Therefore, if the "direct benefits" to which the proposed legislation refers are found to encompass benefits in which the public officials in question have a complete and vested interest and enforceable claim, the legislation could be subject to a challenge based on the claim that it sweeps too broadly in violation of due process.
For this reason, I would suggest a more narrowly tailored description of the benefits that are to be the subject of the legislation.
Avoid Retroactive Impairment of Contract
In a matter related to the one discussed above (i.e., the legislation's possible impingement on vested interests), the legislation may need to be drafted to operate prospectively only, rather than retroactively, so as to avoid a claim of unconstitutional impairment of contract.
Both the United States and the Arkansas constitutions prohibit the impairment of contractual rights. See U.S. CONST., art. 1, § 10; ARK. CONST., art. 2, § 17. The Arkansas Supreme Court has held that legislation violates this constitutional principle if it operates retroactively so as to divest previously existing contractual rights.See Pyle v. Webb, 253 Ark. 940, 489 S.W.2d 796 (1973); Jones v. Cheney,253 Ark. 926, 489 S.W.2d 785 (1973). In both Cheney and Pyle, the court addressed legislation that retroactively divested certain employees of their vested rights to receive retirement benefits. In both instances, the court held the legislation unconstitutional as an impairment of contract.
If the proposed legislation were found to require the forfeiture of benefits for which a public employee may have legally contracted and for which he or she may have fully performed the contractual obligations, it could have the effect of violating the constitutional prohibition against impairment of contractual rights.
For this reason, the legislation should be drafted in such a way that it cannot operate retroactively. (It should be noted that the legislation that was at issue in Kerner, supra, was upheld specifically because it expressly stated that it would not operate retroactively. Moreover, the legislation stated that all public employees who participated in the system were deemed to have accepted the terms of the legislation as a condition to their entitlement to benefits.)
Avoid Vagueness
The language of the legislation should be made as clear as possible.
The constitutional principle of due process prohibits statutory language that is so imprecise that persons of ordinary intelligence must guess as to its meaning. See, e.g., McKinley v. Arkansas Dept. of Human Services,Div. of Family Services, 311 Ark. 382, 844 S.W.2d 366 (1993).
As currently drafted, the language of Mr. Graves' proposed legislation is a bit indefinite in certain respects. More specifically, certain terms are undefined. The lack of definitions could require the reader to conjecture as to the appropriate meanings of the various terms. For example, it is unclear exactly what is meant by a "direct benefit," and in what respect it must be "related to . . . public service or employment." In addition, although certain examples of such benefits are listed in the legislation, the list, by its own terms, is not exhaustive. Moreover, the examples themselves could be considered to be vague. It is unclear exactly what is meant by the phrase "publicly funded or derived retirement accounts," and by the phrase "insurance positions or investments." These terms could refer to a wide range of benefits (including those which were funded, either in whole or in part, by the public official in question); it is therefore somewhat unclear what benefits would be subject to forfeiture.
For this reason, I would suggest that the legislation include a section defining the terms used therein.
State the Purpose of the Legislation
The legislation should be drafted so that it clearly states its purpose, thereby assuring that its execution would bear a rational relation to the accomplishment of that purpose.
The constitutional principle of substantive due process provides that legislation which imposes a restriction on life, liberty, or property must not be arbitrary. Under the most lenient standard of review, which is usually applied to restrictions upon economic interests of the type impacted by Mr. Graves' legislation, the legislation must bear at least a rational relation to a legitimate governmental interest. See generallyPorts Petroleum Co. v. Tucker, 323 Ark. 680, ___ S.W.2d ___ (1996);Johnson v. Sunray Servs, 306 Ark. 497, 816 S.W.2d 582 (1991); Streightv. Ragland, 280 Ark. 206, 655 S.W.2d 459 (1983). Under this standard, the court will uphold the constitutionality of the challenged legislation if a rational basis for the restriction can even be conceived; such a basis need not actually be established. Id.
Accordingly, a court addressing a challenge to the legislation will be in a better position to conceive of a rational basis for it if that basis is clearly stated in the legislation itself. The legislation, in turn, will stand a better chance of surviving a constitutional challenge. It will also more readily survive if it is carefully drafted to assure that its execution will be rationally related to the accomplishment of that purpose.
Limit the Scope to State Employees
As currently drafted, Mr. Graves' proposed legislation purports to govern federal employees, whose benefits are not funded by Arkansas state taxpayers, as such. The State of Arkansas has no authority or basis upon which to exercise jurisdiction over such benefits or to transfer such benefits, if forfeited, to its own funds. For this reason, the legislation would avoid a legal pitfall if it were limited in its scope to state employees.
Conclusion
I reiterate that legislation designed to accomplish Mr. Graves' purposes can be effective and successful and can survive constitutional and other legal challenges. Because the possible challenges are many, it is essential that such legislation be drafted with an eye toward avoiding the pitfalls.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh